## STATE v. PRATER.

1. It is for the Circuit Judge to determine whether a juror is indifferent or not, and whether he should, therefore, be sworn or rejected.
2. Where three persons are on trial together, and a juror is rejected by the Circuit Judge because not indifferent as to one of the prisoners (the juror being a surety on his recognizance), the other prisoners have no ground for complaint. A prisoner may reject a certain number of jurors, but he has not any right of selection.
3. The judge properly refused to receive parol evidence to show that a witness had once been guilty of a crime, the commission of which he denied on his cross-examination.
4. It is no ground for a new trial in favor of one defendant that proper evidence affecting only another defendant was rejected at the trial of the case.

5. The deposition of a witness at the coroner's inquest, as taken down by the coroner, is the best evidence of what such witness then swore.

6. When a witness is offered for the purpose of impeaching or of sustaining the general character of another, there is no set form of words which must be followed with rigid exactness. It is sufficient if the proper information is elicited.

7. Is it error of law for the Circuit Judge to receive requests to charge after the time prescribed by rule of court?

8. It is not error to refuse a request to charge when the principle therein stated is otherwise substantially charged.

9. Where the plaintiff introduces evidence as to a certain matter, and then a witness for the defendant testifies in relation thereto, the plaintiff may, in reply, contradict the statements of such witness.

10. In a law case this court cannot interfere with the refusal of a Circuit Judge to grant a new trial for alleged insufficiency of evidence to support the verdict.

11. The presiding judge should advise the jury not to convict on the uncorroborated testimony of an accomplice; but a conviction upon such testimony is not error of law.

Before WITHERSPOON, J., Orangeburg, May, 1886.

The charge of the Circuit Judge upon the matters involved in this appeal was as follows:

Now, gentlemen of the jury, what is the case submitted to you? The State charges the defendants, Jack Prater, Bill Gordon, and Titus Ferguson, with murder, in this: That Jack Prater on the 14th of July, 1885, last year, in this county, with malice aforethought, with a certain gun shot and killed one Andrew Jackson. That is the charge against Jack Prater which the State makes. The State further charges, in the same indictment, that the defendants, Bill Gordon and Titus Ferguson, were then and there present, and of their malice aforethought aided and abetted, counselled and advised Jack Prater in taking the life of Andrew Jackson with malice aforethought. Now, you see, Mr. Foreman and gentlemen, that the State charges that Jack Prater fired the fatal shot with malice aforethought; that Bill Gordon and Titus Ferguson were there within supporting distance of him, aiding, abetting, and assisting him in committing that murder, with malice aforethought. * * * Two of these parties are indicted as accessories. Before there can be an accessory there must be a

principal criminal. There must be a principal actor before there can be an accessory aiding, abetting, and counselling such a one to commit the act. Has the State satisfied you, beyond a reasonable doubt, that Prater, with malice aforethought, took the life of Jackson upon the night of the 14th of July last? In other words, did he murder him? As I say, the State must satisfy you beyond a reasonable doubt, arising from the testimony, before the State can claim a verdict of guilty against Prater. You must not only find that Prater killed this man with malice aforethought, but before you can find the other two guilty you must find that Gordon and Ferguson, instigated with malice, were present and gave aid, abetted, and counselled and advised Prater to murder Jackson. In order to be an aider or abettor the person so aiding and abetting must be present within aiding distance, to aid by counsel, by watching, or by assisting the person doing the unlawful act. But the law says in this State that all who are proved to be present aiding, abetting, counselling, and advising another with malice aforethought to commit murder are equally guilty with the principal. There is no distinction in this State. * * * Now, I have stated to you that you are the sole judges of the facts. As the counsel have properly said, much depends upon the facts of the case. I have given you the law of murder and of manslaughter. Now, it is for you to say whether or not these defendants or any of them are guilty. It is incumbent upon the State to make good the charges it makes against its citizens. It must satisfy you beyond a reasonable doubt that Prater fired that gun and took the life of Andrew Jackson with malice aforethought. Did he, or did he not? If you conclude that he did not, then you must find him not guilty. If you conclude that he did, then you will go to the guilt or innocence of the other two people charged, Gordon and Ferguson. Were they present within supporting distance counselling and advising with a malicious heart and purpose and intent to have the life of Andrew Jackson taken? If you find beyond a reasonable doubt that they were, then they are just as guilty as the man who did the act. If you find that they were not, then you cannot convict them.

The grounds of defendant's appeal are substantially stated in the opinion, except the second, which was as follows: "Because

his honor erred in refusing testimony offered by defendant, to show that Frank Riley, a witness for the State, had been accused and taken up upon the charge of stealing cotton from the gin house of one Gunter, there being no record of a conviction or other legal proceedings as to the said larceny, the defendant offering to prove the same and to contradict the said witness, who was asked about and who denied the same."

*Messrs. M. I. Browning* and *T. M. Raysor*, for appellant.

*Messrs. Izlar & Glaze*, contra.

February 28, 1887. The opinion of the court was delivered by

MR. JUSTICE McIVER. The appellant, with two others, Bill Gordon and Titus Ferguson, was indicted for murder, the charge in the indictment being that appellant fired the gun, and that the other two parties were present aiding and abetting. The jury rendered a general verdict of guilty, with a recommendation of Gordon and Ferguson to the mercy of the court. A motion for new trial was submitted to the Circuit Judge who granted the motion as to Gordon and Ferguson, but refused it as to the appellant, who thereupon gave due notice of appeal upon several grounds which will be considered in their order.

The first ground alleges error in allowing a challenge for cause made by the State to one of the jurors presented, upon the ground that he was surety on the recognizance of the defendant, Gordon, in face of the fact that this juror when examined on his *voir dire*, had sworn that he was not sensible of any bias or prejudice in the cause, and that he had not expressed or formed any opinion therein. (It is perhaps proper to note here that in the printed "Case" as prepared for argument in this court, it is stated that the juror on his examination, "showed" that he was not sensible of any bias, &c., but at the hearing it was admitted that this was a misprint and that the word should be "swore" instead of "showed.") It is quite clear that the mere fact that a given juror swears that he is not sensible of any bias would not be sufficient to qualify him to sit as a juror in a particular case; for if that were the rule, then a close friend, or even a near relative of

the accused, might by simply swearing that he was not sensible of any bias, force himself upon the jury.

Indeed, the very language of the statute (section 2261 of the *General Statutes*), shows conclusively that the question is addressed to the discretion of the Circuit Court; and if the judge of that court is not satisfied that the juror in question is indiffer-ent in the cause, he should be rejected and another called in his place. The language is: "*If it appears to the court* that the juror is not indifferent in the cause, he shall be placed aside as to the trial of that cause, and another shall be called." This is the construction which has already been given to that statute in the case of *The State* v. *Dodson*, 16 *S. C.*, 459, and followed in the case of *The State* v. *Coleman*, 20 *Id.*, 448. If, therefore, it appeared to the Circuit Judge, from the fact that the juror in question was surety on the recognizance of one of the defendants, or from any other fact appearing in the examination, that the juror was not indifferent in the cause, it was not only his right but his duty to reject the juror and have another called in his place.

The fact that the juror was not the surety of the appellant here, and might, therefore, have been wholly indifferent so far as Prater was concerned, cannot affect the question. The three parties were tried together, and if any juror presented appeared not to be indifferent as to either one of the three, that was suffi-cient to warrant his rejection. The right of challenge secured to the accused does not carry with it the right of *selection*, but simply the right of rejection. If, therefore, the appellant had particu-larly desired to select the juror in question, and he had been challenged by either of the others, or had been deemed not indif-ferent as to either of the others, he could not properly be sworn as a juror in the case. *State* v. *Wise and Johnson*, 7 *Rich.*, 412; *State* v. *Gill*, 14 *S. C.*, 411. The first exception cannot, therefore, be sustained.

The second exception was very properly abandoned by the counsel who so zealously and forcibly presented the case of the appellant here, as it is quite clear that it could not be sustained.

The third exception is in the following language: "Because his honor erred in refusing evidence offered by defendant, that

Ben Toby, a witness for the State, had made two contradictory statements before the coroner, as to facts testified to by said witness at the trial, relating to the whereabouts of Bill Gordon, one of the defendants, on the night of the killing of Andrew Jackson, the said witness having been interrogated concerning the same, and the deposition before the coroner having been put in evidence." It seems that on the trial of this case Ben Toby stated that he did not, when first interrogated by the coroner, deny seeing Gordon on the night the homicide was committed, and the testimony which was rejected was offered for the purpose of showing that Toby did so swear before the coroner. We are unable to see how the testimony which was rejected could possibly affect this appellant, and, therefore, even if there was error in rejecting it, so far as Gordon was concerned, that would furnish no ground for a new trial in the case presented for our determination. But when we consider that the statute (section 2675 of the *General Statutes*) expressly requires that: "The testimony of all witnesses examined upon an inquest shall be taken down in writing by the coroner and signed by the witnesses," and that the evidence so taken down shall be filed with the clerk (section 719), this would seem to constitute the best and highest evidence of what a witness may have testified to before the coroner and that was already before the court. We do not think that this exception can be sustained.

The fourth exception is not as specific as it should be, but nevertheless in a case of such gravity as this we will not decline to consider it. As we understand the exception, the error complained of is that when Dr. Hydrick was placed upon the stand to sustain the character of Riley, one of the witnesses for the State, the usual formula employed in impeaching or sustaining the general character of a witness was not strictly pursued. We do not understand that any precise form of words in which a witness offered to impeach or sustain the character of another witness shall be interrogated, has ever been established so firmly as to require that such form shall be followed with rigid exactness. The case of *Dollard* v. *Dollard*, 1 *Rice Dig.*, 294 (not reported elsewhere), itself shows this ; for while that case declares that the most proper question is "what is the general character of the wit-

ness, good or bad?" yet the case goes on to say that, "some have thought it most expedient to ask, in the first instance, 'what is the general character as to veracity?' Now, although *there can be no objection* to such a question, as the inquiry relates to veracity, yet it is not as proper as the more general question," &c. See also the remarks of O'Neall, J., in *Anon.*, 1 *Hill*, at page 258. Also 1 *Stark. Evid.*, 145. It seems to us, therefore, that when a witness is offered, either for the purpose of impeaching or sustaining the general character of another, there is no set form of words which must be followed with rigid exactness in interrogating such witness. The important and material matter is whether the witness under examination is acquainted with the general character of the witness, whose character is under scrutiny, and what that character is, and that information may be elicited by any form of interrogatory, not otherwise objectionable, whether it conforms strictly to any stereotyped formula or not.

The fifth exception—that his honor erred in permitting counsel for the State to submit a request to charge at the close of the charge to the jury—seems to have been taken under a misconception of the facts. For it appears from the report of the Circuit Judge, that this request to charge was not in fact submitted at the close of the charge, but was really presented at the close of the testimony, and when the judge had concluded his charge one of the counsel for the State simply called the attention of the judge to the fact that, in delivering his charge, he had omitted any reference to the request which had really been submitted at the proper time. So that in reality the counsel for the State simply called the attention of the judge to an inadvertent omission in the charge, and in this there was certainly no error or violation of the rule. It would be something remarkable if a Circuit Judge, called upon to charge a jury at the conclusion of a tedious and exciting trial, should not sometimes commit an oversight or make an inadvertent omission, and surely to call his attention to such oversight or omission, so that it may at once be corrected or supplied, is surely anything else but error.

We do not wish to be understood as implying, by what we have said, that the violation of the rule prescribing the proper time for submitting requests to charge, with the acquiescence of the Cir-

cuit Judge, would necessarily constitute such an error of law as would require that a new trial should be granted. This rule, as we understand it, was designed mainly for the benefit of the Circuit Judge, so as to give him time to consider the several propositions of law relied upon by counsel, and to arrange his charge accordingly ; and if he chooses to dispense with its strict observance as to the time when the requests to charge are submitted, we are not prepared to say that this would constitute such an error of law as would entitle an appellant to a new trial.

The sixth exception—that the Circuit Judge erred in refusing the several requests to charge as set out in this exception—cannot be sustained, for the reason that every proposition of law contained in these requests will be found embraced in the charge, which is set out in full in the record. A Circuit Judge is not bound to adopt the precise phraseology in which requests to charge are embodied by counsel. If the propositions of law which they present are substantially presented to the jury, the fact that they are presented in the judge's own language, and not in the language employed by counsel, affords no ground of exception.

For example, take the first subdivision in this exception, which alleges error on the part of the Circuit Judge in refusing the charge, "that persons not present nor sufficiently near to render assistance are not principals." Now, the language of the judge in reference to this point was: "In order to be an aider or abettor, the person so aiding and abetting must be present within aiding distance, to aid by counsel, by watching, or by assisting the person doing the unlawful act." The proposition of law which the request sought to have impressed upon the jury was, that to constitute one a principal he must be near enough to render some assistance to the person who actually does the unlawful act; and it seems to us that the phraseology employed by the Circuit Judge just as fully, and perhaps a little more so, conveyed the desired idea to the jury as if he had used the identical language in which the request to charge was couched. To say that the person so charged as a principal as being present aiding and abetting, "must be present *within aiding distance*," is surely the same thing as to say that "persons not present *nor sufficiently near to render assistance* are not principals." From the language used by the

Circuit Judge, the jury could not fail to understand that to constitute one, who did not himself do the unlawful act, a principal by reason of the fact that he was aiding and abetting in the performance of such act, he must either be actually present or near enough to render assistance while the act was being done; and this is the real point of the request to charge. So it will be found that each one of the several propositions contained in the requests to charge was substantially charged by the Circuit Judge, though, perhaps, not always in the precise terms in which the requests were stated.

The seventh exception, alleging error in allowing the State in the reply to offer evidence in regard to the hole in the chimney of the house of the deceased, not in reply to any new matter brought out by the defence, is not well taken. It appears that in the testimony in chief on the part of the State, some evidence in reference to the hole in the chimney was adduced, and that in the defence a witness, Mag Gleaton, was examined in reference to that matter. When the State came to the reply, the witness, Jones, was examined as to the hole, for the purpose of contradicting the testimony of Mag Gleaton. This was clearly competent, even if it had been objected to at the proper time, about which there seems to be some difference of opinion between the counsel; but we have assumed that the testimony was duly excepted to at the proper time.

The eighth and last exception is in the following language: "Because his honor erred in refusing the motion for a new trial, as to this defendant, upon the ground of insufficiency of evidence, the only positive and unimpeached evidence being that of Robert Tyler, a witness for the State, whose evidence was most improbable, and who, if his evidence was true, was an accomplice, and lacked corroboration." As far back as the case of *The State* v. *Cardoza* (11 *S. C.*, 222), this court said: "It has been so often held that this court cannot set aside the verdict of a jury, in a case in the nature of an action at law, or in a criminal case, on the ground that the verdict was against the evidence, or unsupported by it, that it is not necessary to consider that portion of the appeal that makes such a demand further than to say that it is not competent for this court to say, on appeal in such a case,

that a discrepancy between the evidence and the verdict based
upon it is so great as to warrant the inference that the jury were
influenced by improper considerations.    The proper place to
examine questions of that nature is at the Circuit, and the deci-
sion of the Circuit Court, so long as no error of law is committed
by it, is final and conclusive." This doctrine has been so re-
peatedly recognized and enforced, that it is not necessary to cite
the numerous cases in which it has been recognized and acted on.

The sole question, therefore, for us to consider is, whether the
Circuit Judge committed any *error of law* in refusing the motion
for a new trial.   No such error has been pointed out to us, and
we have not been able to discover any.   The testimony of an
accomplice is undoubtedly *competent*, while its credibility is for
the jury and not for us.   If, therefore, a jury should see fit to
convict upon the uncorroborated testimony of an accomplice, we
do not see any ground upon which we could interfere without
invading the province of the jury, which we are forbidden to do.
So if, in such a case, a Circuit Judge should refuse to grant a new
trial, we do not see upon what ground we could impute to him
*error of law* in so doing.   *State* v. *Scott,* 15 *S. C.,* 438.   It is
true that the proper practice is for the presiding judge to *advise*
the jury not to convict upon the uncorroborated testimony of an
accomplice (*State* v. *Wingo,* 11 *S. C.,* 275, note; *State* v. *Scott,*
*supra*); but we know of no authority which requires that they
shall be *directed* to acquit unless the testimony of the accomplice
is corroborated; and if the jury see fit to disregard such *advice,*
then the only remedy is by a motion addressed to the Circuit
Judge for a new trial, upon which motion his decision, in the
absence of any *error of law,* "is final and conclusive."   So that,
even if the appellant had been convicted upon the uncorroborated
testimony of an accomplice, and the Circuit Judge had refused a
motion for a new trial, based upon the ground of insufficiency of
evidence, we are unable to see by what authority this court could
interfere.

While it is true that in the case of *The State* v. *Wingo, supra,*
a new trial was granted by the Court of Appeals because the
defendant appeared to have been convicted upon the uncorrobor-
ated testimony of an accomplice, yet it must be remembered that

at that time the Court of Appeals was invested with the power, which has been denied to us by the constitution, of granting new trials for insufficient evidence. But even in that case the late Chief Justice Dunkin used this language: "It cannot, therefore, be affirmed that the verdict was illegal, although unsustained by any evidence except that of an accomplice;" showing plainly that the new trial was not granted upon the ground of error of law, but solely on the ground of the insufficiency of the evidence.

In justice, however, to the Circuit Judge, we ought to add that the case for the prosecution did not rest alone upon the uncorroborated testimony of the accomplice, and therefore it cannot properly be said that he has refused a motion to set aside a verdict based alone upon such testimony.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.