MARTIN *v.* FARMERS' MUTUAL FIRE-INSURANCE COMPANY OF CALHOUN COUNTY.

1. JURORS—DISQUALIFICATION—INTEREST IN RESULT OF ACTION.
   In an action against a mutual fire-insurance company, members thereof, liable to be assessed to pay the loss if the company should be defeated, are interested, and incompetent as jurors.

2. SAME—OBJECTION—WAIVER.
   Plaintiff challenged a disqualified juror for cause, and, on the overruling of the challenge, exercised a peremptory challenge. Thereafter, and while plaintiff still had two peremptory challenges, four other jurors, disqualified for the same reason, were called, and plaintiff neither challenged for cause nor exercised his peremptory challenges. *Held,* that he did not thereby waive his objections to the disqualified jurors.

Error to Calhoun; Hopkins, J. Submitted January 18, 1905. (Docket No. 69.) Decided February 27, 1905.

Assumpsit by John F. Martin against the Farmers' Mutual Fire-Insurance Company of Calhoun County on a policy of insurance. There was judgment for defendant, and plaintiff brings error. Reversed.

*Hatch & Page*, for appellant.

*William H. Porter*, for appellee.

McALVAY, J.   Plaintiff brought suit in justice's court against defendant company upon a policy of insurance, claiming damages for injury to his horse by lightning, and recovered judgment for $125. Defendant appealed to the circuit court for Calhoun county, where, upon trial, a jury rendered a verdict in its favor of no cause of action, and judgment was accordingly entered. Plaintiff brings the case to this court by writ of error.

In April, 1897, plaintiff, who lived upon a farm in Emmet township, Calhoun county, made application in writing for insurance on his farm property. A policy was issued upon such application in the sum of $1,000, and he became a member of defendant company. Having changed his residence and removed his personal farm property to Marengo township on November 28, 1899, his original application and the insurance policy were changed to cover the property at its new location, the amount of insurance being increased to $1,225. Having leased his farm on shares for one year, he moved to the city of Marshall, December 12, 1901, taking with him his household goods and the horse in question. May 31, 1902, on application, the amount of his insurance was reduced to $800, of which the amount on live stock and farm implements was $150. Plaintiff paid his assessments, and was a member in good standing July 17, 1902, when the injury to the horse occurred. The insurance policy refers to the application, and makes it a part of the policy, and by the terms of both writings the insurance is subject to the provisions of the charter and by-laws of the company.

Defendant company by its articles of incorporation was authorized to insure buildings and contents belonging to its members within the limits of villages and cities, when such buildings were detached risks, not less than 80 feet from all other risks. There was a provision by by-law No. 19:

"All members holding policies on live stock and other personal property are hereby insured at all times and in all places in said county of Calhoun while on or about their business in connection with farming."

Plaintiff claims that when the last change was made in the policy he instructed the secretary of the company to cut off all property that was not insured where he lived, and that the secretary told him that he was insured on horse and buggy anywhere in the county. He also claims that the company is estopped from denying that the policy covered the horse at the time of injury, on account of waiver of the forfeiture of the policy, and also on account of receiving certain assessments after the change in the policy, and after knowledge of the claim for injury to the horse. Plaintiff also claims that he was within the provisions of by-law No. 19, the horse being where it was while on or about his business of farming. The proof is clear that the buildings in Marshall, where plaintiff lived, were not detached risks under the charter, being less than 80 feet from other risks.

Defendant positively denies the claim of plaintiff as to what occurred when the policy was changed May 31, 1902, claiming that the secretary told plaintiff that, if the buildings were not detached, none of the property would be insured, and on this date plaintiff said they were not detached, and then the change was made; the household goods were cut off, and plaintiff said he would keep a colt, a mare, and some tools on the farm, and the amount in the policy was left as plaintiff elected. An issue of fact was raised as to what actually occurred. The first assessment referred to was made May 31, 1902, and paid later. The second one was in November, 1902, on the full amount of the policy, and was also paid.

The errors relied upon relate, first, to the action of the court in allowing four members of defendant company in good standing, having policies in force, to sit on the jury. In securing a jury, five members of the company were called. Plaintiff raised the question as to the first one

that it was a mutual company and the juror was interested, and asked to have him excused for cause. The court held the challenge not good, and the plaintiff took exception. The juror was then challenged peremptorily. One other peremptory challenge was used by plaintiff. The record does not show that this challenge for cause was repeated, but it does show that there were four members of the company left to try the case. It is claimed that plaintiff waived any objection by passing the jury for cause and afterwards accepting the jury.

A motion for a new trial based upon this ground was denied, for the reason that two of these declared that they " were free from bias and prejudice," " and it is assumed that both the plaintiff and his attorney so regarded them;" that the other two were not examined as to bias and prejudice; that plaintiff still had two unexhausted peremptory challenges at the time he announced himself satisfied. The court indicated that being a member of this company did not disqualify, if the juror stated he could fairly try the case without bias or prejudice, and the court so held.

The fact that these jurors were members of this mutual fire-insurance company, liable to be assessed and to pay if this case went against the company, disqualified them from sitting. Two peremptory challenges remained to get rid of four jurors, under the ruling of the court. The question is whether plaintiff waived his objection to these jurors by not making specific objections to each one, getting the ruling of the court and exceptions, and then exhausting the two remaining peremptory challenges, and whether he waived all objection by accepting the jury.

A party having knowledge of the fact that a juror is interested in the result of a case should bring the matter to the attention of the court. This is indicated in the case of *Peninsular Railway Co.* v. *Howard*, 20 Mich. 25, where, in a condemnation proceeding before a probate judge, two stockholders of the company served on the jury, but the fact of their interest did not come to the knowledge of the defendant until the jury were sworn and

had proceeded to view the premises to make inquest of damages. This court held that the confirmation must be set aside for the reason that no legal jury was impaneled.

In the case of *Sullings* v. *Shakespeare,* 46 Mich. 408, this court laid down the rule that overruling a challenge for cause and compelling a party to resort to a peremptory challenge does not prejudice him, where, when the jury is accepted, he still has peremptory challenges which he does not use. In that case the court said:

" If, by the overruling of the challenge, anything could be inferred in the cause prejudicial to the rights of the plaintiff by compelling him to exhaust his peremptory challenges on persons liable to other objections, the case would be different."

This rule was followed in *People* v. *Barker,* 60 Mich. 277; *People* v. *Aplin,* 86 Mich. 393.

It may be that plaintiff's attorney was not as diligent as he might have been in making the record show beyond question that he did not waive his objections to these jurors; but in view of the fact that the court held the ground of challenge for cause not good, and that it was not necessary to multiply the exceptions upon the same point, and that he had but two peremptory challenges to use upon four disqualified jurors, we cannot presume that he waived his client's rights and consented to try a case with a jury one-third of which was directly interested in the result of the suit, and personally liable to pay a part of the judgment in case of recovery by plaintiff.

In denying the motion for a new trial, the trial judge went upon the theory that the two jurors who had stated that they were without bias or prejudice, although members of the company, were qualified to act, and stated that for the purpose of the motion he assumed that plaintiff so regarded them, and also that plaintiff should have exhausted his peremptories upon the other two. He does not intimate that he was mistaken in his ruling upon the trial that the objection to these jurors was not well taken. The disqualification of a judge or juror to sit in a case is a

question of vital interest to more than the parties to a suit. It involves the administration of justice before disinterested, unprejudiced, and impartial tribunals.   The court erred in holding the challenge for cause not sufficient, and also that plaintiff had waived his objection.   A new trial should have been granted.   The court erred in denying it.

As there must be a new trial, it is necessary to refer briefly to the other errors claimed.   We think that the court fairly submitted the case to the jury in his charge, and we do not find error in his refusal to grant plaintiff's requests to charge, or in the refusal to submit the case upon the theory of waiver of forfeiture.

For reasons herein expressed, the judgment of the court below is reversed, and a new trial ordered, with costs of this court to plaintiff.

GRANT, BLAIR, MONTGOMERY, and OSTRANDER, JJ., concurred.