[Civil No. 2187. Filed July 21, 1923.]

[217 Pac. 945.]

# GREENE & GRIFFIN REAL ESTATE AND INVESTMENT COMPANY, a Corporation, Appellant, v. SALT RIVER VALLEY WATER USERS' ASSOCIATION, a Corporation, Appellee.

1. WATERS AND WATERCOURSES — ASSESSMENT FOR CORPORATE PURPOSES ON FULLY PAID STOCK BY IRRIGATION CORPORATION HELD NOT PROHIBITED BY STATUTE.—Civil Code of 1913, paragraph 2116, providing for the forfeiture and sale of stock for failure to pay subscription price and declaring "nothing herein shall be construed to authorize any corporation to levy any assessment on its shares or the holders thereof after the original subscription price or par value of such shares shall have been paid," does not in fact prohibit the levy of such an assessment so as to preclude an irrigation corporation from levying assessments upon fully paid stock for corporate purposes.

2. WATERS AND WATERCOURSES—IRRIGATION CORPORATION MAY MAKE ITS STOCK INSEPARABLY APPURTENANT TO LAND OF SHAREHOLDERS WHICH BECOMES LIABLE FOR ASSESSMENTS TO ACCRUE IN FUTURE. Mutual irrigation corporations may provide in their articles of incorporation that shares of stock which merely evidence a right to a certain amount of water are inseparably appurtenant to the land owned by the stockholders, so that such lands are subject to liens for assessments to accrue in the future.

3. WATERS AND WATERCOURSES—ASSESSMENT LIEN OF IRRIGATION CORPORATION ON LAND TO WHICH STOCK IS INSEPARABLY APPURTENANT IS SUPERIOR TO PRIOR MORTGAGE LIEN.—Where the articles of incorporation of an irrigation association provide that its stock is inseparably appurtenant to land of a shareholder and that assessments, "until they are paid or otherwise discharged, shall be and remain, a lien on the land of the shareholder against which they are levied and upon the shares of stocks appurtenant to said lands," an assessment levy for corporate purpose is superior to a prior mortgage lien and is enforceable regardless of ownership; it being immaterial whether the mortgagee or a purchaser of the

3. Superiority of lien of local assessment over prior lien, see notes in Ann. Cas. 1913C, 1210; 35 L. R. A. 372; 30 L. R. A. (N. S.) 761. See 40 Cyc. 825, 826

land had actual knowledge of the lien or the corporation's power to create one by levying an assessment.

4. WATERS AND WATERCOURSES—PURCHASER OF ARID LAND IS CHARGED WITH KNOWLEDGE OF ARTICLES OF INCORPORATION GOVERNING OPERATION AND MAINTENANCE OF IRRIGATION PROJECT.—One acquiring title to land in an arid country which is subject to and relies on an irrigation project is charged with notice of the provisions of the articles of incorporation relating to the manner of operating and maintaining such project.

APPEAL from a judgment of the Superior Court of the County of Maricopa. F. C. Struckmeyer, Judge. Affirmed.

Messrs. Townsend, Stockton & Drake, for Appellant.

Messrs. Kibbey, Bennett, Gust & Smith, for Appellee.

McALISTER, C. J.—This suit was instituted by the Greene & Griffin Real Estate & Investment Company, a corporation, for the purpose of enjoining the Salt River Valley Water Users' Association from proceeding with the construction of an improvement designated as Mormon Flat development No. 1 and from issuing the bonds of the association in the sum of $1,800,000 to finance the same, and has been brought to this court on appeal from a judgment in favor of the defendant. The allegations of the complaint and answer, with one important exception, are the same as those in the case of *Orme* v. *Salt River Valley Water Users' Assn., ante,* p. 324, 217 Pac. 935, just decided, and will not be restated here. It is sufficient that the facts necessary to a correct understanding of the proposition giving rise to this exception appear; the others may be ascertained from an examination of that decision.

The complaint discloses that on January 21, 1920, one James Willis, the owner of 80 acres of land

situated in the Salt River reservoir district, executed and delivered to the appellant a mortgage upon said lands as security for a loan of $7,000 made to him by it, which mortgage was recorded in the office of the recorder of Maricopa county, Arizona, on February 9, 1920; that appellant then had no knowledge that this land was receiving water from the Salt River reservoir, that its owner was a stockholder in the Salt River Valley Water Users' Association, that it was subject to assessments for ordinary charges for delivery of water or for the amount due the United States government for constructing the Roosevelt irrigation system, nor of the fact, if it be a fact, that this land might be assessed for the construction of such improvements as Mormon Flat development No. 1. It is alleged further that at that time no facts of any kind came to appellant's knowledge directing its attention to, or in any way charging it with notice of, any of the alleged rights of appellee to assess such lands for any purpose whatsoever; but notwithstanding this fact the association asserts that the lien of the assessments to assure the payment of the bond issue is a lien upon the above-described land superior to the lien of appellant's mortgage and is so stated in its advertisement of these bonds, and if said assessments are made they will cast a cloud upon appellant's title as mortgagee.

The answer denies these allegations and alleges that long prior to the making of the mortgage above described, to wit, on July 17, 1917, the said James Willis, the mortgagor in said mortgage, made, executed, and delivered to the United States a water right application for the land in question and agreed therein that he would pay the United States the annual installments of the construction charges fixed by the Secretary of the Interior for the Salt River

project, and that these and annual operation costs of the project, together with any accrued penalties, should be a lien upon the tract of land described in said agreement or water right application, which recited that the same must bear the certificate of the water users' association under said project and that the lien held by the United States against said land might be enforced at its option directly, or through the Water Users' Association if given to it directly for the benefit of the United States; that a statement by the secretary of the Water Users' Association that the appellant had subscribed for the stock for the land described therein, and that all assessments levied against said stock had been paid to date, was indorsed thereon; that said water right application was duly recorded in the office of the county recorder of Maricopa county, Arizona, on November 12, 1917, and now appears of record in Book 9 of Water Right Applications at page 221; and that appellant by reason of the recording of this instrument and the recitals contained therein was charged with notice of the obligations of said land.

The trial court held that the lien of the assessments to be levied to assure the payment of the bond issue is superior to the lien of the mortgagee, though the latter is prior in time, and this ruling is the one error assigned and discussed in the briefs.

Appellant contends first that since the shares of stock in the association were fully paid, paragraph 2116, Revised Statutes of 1913, expressly prohibits the levying of assessments thereon, and that the agreement of the shareholders binding themselves to the provision of the articles of incorporation providing for the levying of such assessments is illegal and invalid because in conflict with this statute. After providing for the forfeiture and sale of stock for failure to pay the subscription price thereof to-

gether with the method of procedure, paragraph 2116, *supra,* concludes with this sentence:

"Nothing herein shall be construed to authorize any corporation to levy any assessment on its shares or on the holders thereof after the original subscription price or par value of such shares shall have been paid."

This paragraph did not become a part of the statutes of Arizona until 1907, some four years after the adoption of the articles of incorporation which provide for levying of assessments and making them a lien upon the land and stock appurtenant thereto. But if this were not true, the language quoted would not constitute a prohibition upon the right to assess fully paid stock, because it is nothing more than a statement that this particular paragraph permitting the assessment of stock for the subscription price shall not be construed as authorizing its assessment after it is fully paid. It does not say that such stock shall not be assessed at all. If, therefore, such right exists by virtue of some other provision of the statute or by agreement of the shareholders as expressed in the articles of incorporation, this section would not stand in the way. There is no question of the right of a mutual, irrigation corporation of the character of appellee to levy assessments upon fully paid stock for corporate purposes. *Hall* v. *Eagle Rock & Willow Creek Water Co.,* 5 Idaho, 551, 51 Pac. 110; *Spokane Valley Land & Water Co.* v. *Kootenai County* (D. C.), 199 Fed. 481. In *Huxtable* v. *Berg,* 98 Wash. 616, 168 Pac. 187, the court says:

"Even though the stock has been fully paid for, the articles of incorporation provide for its assessment by way of water rentals. Where the articles of incorporation, or the statute, authorize an assessment upon such stock, it may be levied and collected, notwithstanding the fact that it is fully paid."

If, however, this section did apply and in consequence thereof fully paid stock could not be assessed, we are unable to see wherein it would have any bearing in this case for the reason that the articles of incorporation provide that no payment shall be required for capital stock, but that each subscriber for stock shall make application to the United States government for water rights for the lands to which said stock is made appurtenant, and that he shall pay the government for these rights as the payments thereon, as fixed by the government, become due, and the amount so paid shall be deemed the consideration for his stock which will be fully paid for when the payments for his water rights shall have been completed. And there is no allegation that the payments for the water rights appurtenant to the land in question have all been made.

It is claimed further that stock in a corporation cannot be made inseparably appurtenant to the lands of its owner, and that consequently such lands cannot be subjected by agreement between the shareholders and corporation to liens for assessments to accrue in the future. This doctrine, however, does not apply to mutual, irrigation corporations, for there is no question of the right of the shareholders of such a corporation to provide in their articles of incorporation that shares of stock, which merely evidence a right to a certain amount of water, may not be inseparably appurtenant, except in certain particulars, to the lands of the owner of the stock. This is directly in line with the holding in *Slosser* v. *Salt River Valley Canal Co.*, 7 Ariz. 376, 65 Pac. 332, and *Gould* v. *Maricopa Canal Co.*, 8 Ariz. 429, 76 Pac. 598, and it is unnecessary to discuss it further or state the reasons upon which it is based.

Section 6, article 13, of the articles of incorporation of appellee, reads as follows:

"Section 6. Assessments shall become, from time to time as they are made and levied, and, until they are paid or otherwise discharged, shall be and remain, a lien on the lands of the shareholders against which they are levied, and upon the share of stock appurtenant to said lands, and all rights and interests represented by such share. The manner of fixing the lien and enforcing the same shall be prescribed in the by-laws."

Under this section the lien attaches the moment the assessments are levied and, of course, under the statute a mortgage lien attaches as soon as it is given and recorded; hence appellant contends that its mortgage having been given and recorded long prior to the levying of the assessment in question, its lien is necessarily superior thereto. But it is only where liens are otherwise equal that the first in time is first in right. For instance, a tax lien is always superior to .a mortgage lien. *O'Dea* v. *Mitchell,* 144 Cal. 374, 77 Pac. 1020; *Dressman* v. *Farmers & Traders' Nat. Bank,* 100 Ky. 571, 36 L. R. A. 121, 38 S. W. 1052. Hence it is appellee's contention that these assessment liens are in the nature of tax liens, and therefore paramount to the lien of appellant, and in support of this proposition it cites *Barry* v. *Holmesley,* 24 Ariz. 375, 210 Pac. 318, in which this court, in speaking of an assessment levied by the association, said:

"The assessment, being a lien upon the land, very much in the nature of a tax lien, could have been enforced, if necessary, by a sale of the premises."

The lien attaches to the land and the shares of stock appurtenant thereto and is enforceable regardless of its ownership. A transfer of title to the land, which under other provisions of the articles of incorporation carries with it the appurtenant stock, whether mentioned or not, does not satisfy or discharge the lien. The purchaser under such circum-

stances would be compelled to pay the assessments or suffer the same consequences his grantor would have had he not paid them, and if the mortgagee should become the owner through foreclosure of his mortgage, the lien would still exist, and nothing short of the payment of the assessments would discharge it. This is necessarily true if the corporation is to continue its existence, for its very life depends upon the payment of these assessments, and their enforcement cannot be evaded by transferring the land or in any other way. It is immaterial whether the purchaser or mortgagee had actual knowledge of the lien or of the corporation's power under the articles of incorporation to create one by levying an assessment, though it is inconceivable that one dealing with such land would not have such knowledge, for in an arid country everyone knows that land must be irrigated to produce; that it takes money to construct, operate and maintain irrigation works; and that those whom they serve must pay for them. The mere fact, therefore, that one acquires title to land under such a project is sufficient to charge him with notice of the provisions of the articles of incorporation relating to the manner of operating and maintaining it. These are public records, and an examination of appellee's would have disclosed that the stock to be issued by the corporation is made inseparably appurtenant to the land, and that in purchasing or taking a mortgage upon land one is also purchasing or taking a mortgage upon its appurtenant shares of stock in the corporation.

In *Dempster Mfg. Co.* v. *Downs,* 126 Iowa, 80, 106 Am. St. Rep. 340, 3 Ann. Cas. 187, 101 N. W. 735, the Supreme Court of Iowa said:

"The corporation is created by the adoption of the articles. These form the very basis of its existence. Everyone who deals with it or its stock is charged with knowledge of their contents."

This renders unnecessary a determination of the sufficiency of the water right application and the recitals therein as notice of appellee's right to levy assessments and enforce the liens thereby created.

It is suggested that to hold the lien of the association for its assessments superior to the lien of a mortgagee is to deny the latter protection against extravagant or ill-advised investments by appellee. This is answered by the statement that such a result arises out of the situation and cannot be avoided, and besides appellant's mortgage would in all probability be worthless were it not for the successful operation of the irrigation system under which the land upon which it was taken is situated. It is the co-operation of all the land owners in the association that has made the lands of the Salt River Valley valuable, and the possibility of ill-advised action of appellee may be one of the chances it must take; but after all it is taking no risk, for an indebtedness to exceed $100,000, except for ordinary expenses of operation, cannot be incurred within any one' year without the approval of two-thirds of the shareholders voting at an election, and while a mortgagee cannot vote, his investment cannot be destroyed unless those who do take such action as will also render their own investment worthless.

It is so clear that the lien of the mortgagee, because prior in time, is not superior, or even equal, to that created by the levying of assessments upon the lands of the shareholders that it is unnecessary to discuss it further.

The judgment of the lower court is affirmed.

ROSS and LYMAN, JJ., concur.