[Civil No. 2482.　Filed October 28, 1926.]

[250 Pac. 356.]

## SALT RIVER VALLEY WATER USERS' ASSOCIATION, a Corporation, Appellant, v. J. T. BERRY, Appellee.

40

Messrs. Kibbey, Bennett, Gust, Smith & Lyman, for Appellant.

Messrs. Hayes, Stanford, Laney & Allee, for Appellee.

ROSS, J.—J. T. Berry brought this action against the Salt River Valley Water Users' Association for personal injuries alleged to have been suffered when his horse stepped into an open telephone hole left by defendant and fell, thereby throwing plaintiff to the ground, injuring his back and shoulders, his spinal column, spinal cord and spinal nerves, and his abdominal and thoracic viscera.

Defendant's answer consisted of a general denial and an allegation that plaintiff's injuries were caused solely by plaintiff's fault and negligence in this, that plaintiff knew of said hole and rode his horse carelessly and negligently upon and into the same.

The trial was by a jury. Verdict and judgment were for plaintiff. The defendant appeals from the order overruling its motion for a new trial and from the judgment. (The parties will be designated as in the lower court.)

Defendant complains that five prejudicial errors were committed by the trial court. We will consider these assignments separately, in the order of their presentation.

The competency of certain of the jurors to serve was challenged by the plaintiff on the ground that they were stockholders of the defendant corporation and the sustention of such challenges is assigned as error. Eight jurors were excused over defendant's objection for the sole reason that they were stock-

holders of the defendant. The question is very fully and well presented. The contention that stockholders of defendant are not disqualified to act as jurors is based upon a line of decisions holding that taxpayers of a county, city or town are not disqualified to serve as jurors in a suit against such civic corporations. Recently, recognizing there was a conflict in the authorities on the question, we adopted the view that:

"Disbarring from a jury any representatives of the taxpayers of a community is far more likely to prevent a fair and impartial trial than that their remote interest in the result of the suit would, of itself, prejudice them." *City of Prescott* v. *Sumid,* 30 Ariz. 347, 247 Pac. 122.

This was an action for damages for personal injuries, and we held that a taxpayer's interest in the result was "so remote, indirect and slight that it may fairly be supposed to be incapable of affecting his judgment."

It is contended by defendant that its stockholders occupy the same position toward it that a taxpayer occupies towards his county, city, or town. But the relation a taxpayer sustains to his county, city, or town is not, ordinarily, a direct personal one; it is, rather, impersonal. He recognizes, as a matter of course, that it is his duty to contribute his proportionate share, whatever it is, to the legitimate current expenses of the municipal or *quasi*-municipal corporation of which he is a citizen member, and when such organization is sued he is more interested in seeing justice done than in the slight additional tax burden a judgment in such suit might be upon him.

Defendant was incorporated under the general laws to furnish water to 250,000 acres of land under the Salt River project. Its stockholders are the owners of irrigable land within the project and each of them has as many shares as he owns acres. Revenues

for corporate purposes are raised by levying assessments on the stockholders, and such assessments are made liens on the lands of the members. The defendant is chartered as any other private corporation and exercises the powers common to such. True, it also exercises some powers in the matter of taxation common to governmental agencies. *Orme* v. *Salt River Valley Water Users' Assn.*, 25 Ariz. 324, 217 Pac. 935; *Greene & Griffin* v. *Salt River Valley Water Users' Assn.*, 25 Ariz. 354, 217 Pac. 945. But we do not think this would have the effect of changing the status of a stockholder into one of indifference as in the case of a taxpayer of a municipality. To allow stockholders of defendant to sit as jurors, when it is sued, is not unlike permitting the stockholders of a bank, or a railroad, or any other large corporation to act as jurors when such corporation is sued. The interest of the juror in the latter case is too apt to become identical with the interest of the stockholder.

"Interest, on the part of the juror, in the event of the action or in the main question involved in the action" is one of the statutory grounds of challenge for cause. Subdivision 5, par. 3558, Civil Code 1913. The legislative purpose of this provision was, no doubt, to insure a fair and impartial jury. It is very improbable that an interested party, such as a stockholder in a corporation being sued for damages, will be able to act with entire impartiality. Nor do we believe it would be safe to lay down a rule that because the amount sued for is small, compared with the wealth and resources of defendant, the latter's stockholders could be depended upon always to act fairly and impartially.

It seems to us the safe thing to hold is that every stockholder of a private corporation, or a corporation exercising the functions defendant exercises, is interested in the event of a suit brought against

his company and therefore, upon challenge for cause, should be excused. We are not impressed with the argument of defendant that this will result in an unbalanced jury. While it will disqualify all the stockholders of the defendant (some 4,000 to 5,000) to act as jurors in actions to which it is a party, we think little trouble will be experienced in selecting a jury, unaffected by such interest, from a community in which the list of eligible jurors is approximately 30,000. Surely, jurors, a fair cross-section of the community, can be selected from a list so large with no suspicion that their verdict would be colored by their personal interests, and, if that is true, defendant has no real reason to complain.

It must be admitted that defendant is a private corporation engaged in a private enterprise for the pecuniary benefit of its stockholders. It is not a governmental agency. It was not organized under our irrigation district laws and does not operate under such laws. Because it has been permitted, from the necessities of the case, to exercise some powers of a governmental character with approval, it has not been thereby changed from a private to a public corporation. The law with reference to the competency of a stockholder of a private corporation to serve as a juror, when his company is sued, is the law that should be applied here. That rule is stated in 35 C. J. 315, section 326:

"A stockholder in a corporation is incompetent to act as a juror in a case in which the corporation is a party or has any pecuniary interest."

See, also, 16 R. C. L. 274, section 91; *Sovereign Camp of Woodmen of the World* v. *Ward,* 196 Ala. 327, 71 South. 404; *Seeherman* v. *Wilkes-Barre Co.,* 255 Pa. 11, 99 Atl. 174; *Spinney's Admx.* v. *Hooker & Son,* 92 Vt. 146, 102 Atl. 53; *Citizens' Light, Heat & Power Co.* v. *Lee,* 182 Ala. 561, 62 South. 199;

*Edmonds* v. *Modern Woodmen of America,* 125 Mo. App. 214, 102 S. W. 601; *Murchison Nat. Bank* v. *Dunn Oil Mills Co.,* 150 N. C. 683, 64 S. E. 883; *Featherstone* v. *Lowell Cotton Mills,* 159 N. C. 429, 74 S. E. 918; *Putnam* v. *Pacific Monthly Co.,* 68 Or. 36, Ann. Cas. 1915C 256, 45 L. R. A. (N. S.) 338, L. R. A. 1915F 782, 130 Pac. 986; on rehearing, 68 Or. 54, Ann. Cas. 1915C 256, 45 L. R. A. (N. S.) 338, L. R. A. 1915F 782, 136 Pac. 835; *Martin* v. *Farmers' Mut. Fire Ins. Co.,* 139 Mich. 148, 102 N. W. 656.

Defendant complains that the evidence showed plaintiff's negligence was the proximate cause of his injury, and that therefore the court erred in its refusal at the close of plaintiff's case, and at the close of the whole case, to direct a verdict and in not granting defendant's motion for a new trial on that ground.

Whether there was any foundation for these motions, of course, depends upon the evidence. It showed that, at the time of the accident, plaintiff was living on a farm, near Tempe, along and by which there was a public highway, the middle sixteen feet of which was paved, the rest (twenty-five feet on each side) being unpaved; that the defendant and the Mountain States' Telephone Company each had telephone lines along and in the highway and on the west side of the pavement by plaintiff's farm-house, and extending beyond in a southerly direction for about a mile; that in August, 1924, both telephone lines were taken down and the telephone poles removed, and a new line erected by the Mountain States' Telephone Company for their joint use; that the Mountain States' Telephone Company filled some of the holes caused by the removal of its line of poles, but that defendant left the holes caused by the removal of poles on its line unfilled and open; that these holes were about one hundred and forty feet apart for a distance

of four-fifths of a mile along the highway in a southerly direction from plaintiff's farm-house; that the holes were about fifteen inches across and three feet deep and in the right of way of the public road; that on October 10, 1924, plaintiff, while driving his dairy herd (about eighty head) along the highway and on the unpaved part thereof, in attempting to cut out of his herd two cows belonging to someone else, was thrown to the ground when his horse stepped into one of the holes left open by defendant; that his horse was trotting when it stepped into the hole; that plaintiff was watching the cattle at the time; that, if he had been looking, he might have seen the hole; that he examined it the following day and found it almost hidden by Bermuda grass; that plaintiff had, from time to time, seen the holes left open by the removal of poles, from in August, when the poles were removed, to October 10th, but had paid no particular attention to the hole into which his horse stepped; that such hole was one of those farthest from his ranch-house.

The above was, for all practical purposes, the evidence on the issue of negligence at the close of plaintiff's case and stood at the close of the whole case undisputed, except defendant did introduce some testimony tending to show that there was very little Bermuda grass along the line of the holes, and that where there was any it was too short to cover the holes.

Defendant admits, as it must, that its act in leaving the holes unfilled, uncovered and unprotected on the public highway which was in constant use by the general public was negligent. But, after confessing negligence, which we must characterize as most flagrant, defendant claims immunity because, it says, plaintiff's and not its negligence was the proximate cause of the injuries to the former.

If the law of negligence had not been changed by our Constitution and supplemental legislation, defendant, instead of characterizing plaintiff's negligence as the proximate cause of his injury, doubtless would have called it contributory negligence, for, under the law as it formerly existed, contributory negligence was not only a complete defense but, when admitted or shown, a question of law for the decision of the court. While in tort actions, contributory negligence is not abrogated and may still be interposed as a defense, it is now a question of fact at all times to be left to the jury. Section 5, art. 18, Const.; *Inspiration Cons. Copper Co.* v. *Conwell,* 21 Ariz. 480, 190 Pac. 88; *Davis* v. *Boggs,* 22 Ariz. 497, 199 Pac. 116. It is settled beyond question in this jurisdiction that, if it appears that the plaintiff's injury was caused by concurring acts of negligence of plaintiff and defendant, the defendant is not entitled as a matter of law, to an instructed verdict but the question is one of fact to be passed upon by the jury. Under the common law, if plaintiff's negligence entered into and formed part of the efficient or proximate cause of the injury, it defeated his right of action. Now, it does not, except upon the say-so of the jury. Clearly and unmistakably, this power has been given to the jury; and that it violates no constitutional right has been decided by this court, the Oklahoma courts, whose constitutional provision is the same as ours, and by the Supreme Court of the United States. *Dickinson* v. *Cole,* 74 Okl. 79, 177 Pac. 570; *Chicago, R. I. & P. R. Co.* v. *Cole,* 251 U. S. 54, 64 L. Ed. 133, 40 Sup. Ct. Rep. 68 (see, also, Rose's U. S. Notes).

We have discussed the question thus far upon the assumption that the evidence introduced on the part of the plaintiff showed that he did not exercise ordinary care in the management and control of his horse while driving his dairy cattle upon the highway.

However, whether he was guilty of contributory negligence or not is immaterial to the point here raised. It is certain from the pleadings and the evidence that plaintiff's injury was not the result of his sole negligence. The defendant was guilty of primary negligence when it removed the telephone poles and left open in the public highway, where the general public traveled, a string of holes stretching along for a distance of practically a mile. That it was the defendant's duty to fill the holes or otherwise guard and protect the public against them, there can be no question. That it failed to perform that duty is likewise admitted. And that, if it had done its duty, the plaintiff would not have been injured is obvious. When these things are shown as against defendant, as we understand the decisions of this court and the Oklahoma courts whose Constitution is like ours, the question of defendant's liability should be submitted to a jury.

Defendant cites *Twohy Bros.* v. *Kepon,* 21 Ariz. 606, 193 Pac. 296, and says the holding therein is that:

"Where the court finds that the negligence of any party, be he plaintiff or defendant, was the proximate cause of the injury, it is the duty of the court to instruct a verdict accordingly."

We do not so construe the holding. In that case the plaintiff, who was struck by flying rocks from a blast, charged in his complaint that he was not given any warning or notice so that he might protect himself. The evidence showed that he was adequately warned and actually got behind a dump wagon for protection but left this shelter and ventured into the open, when the blast discharged and threw a rock on his foot. From this it clearly appears that, at least, one of the three necessary elements of primary negligence on the part of defendant was absent. It was not shown that the duty of giving

notice of the blast was not performed, but, on the contrary, that due and adequate warning was given. That case was clearly decided correctly because the evidence without conflict, showed defendant was free from the negligence charged, or, in fact, any negligence.

The third assignment is like unto the second. Under it, however, defendant argues the construction we have given section 5, article 18 of the Constitution denies to defendant, and defendants generally, the equal protection of the law and therefore is violative of the Fourteenth Amendment to the federal Constitution. We confess our inability to follow defendant's reasoning on this point. Practically, where the jury passes upon contributory negligence as a question of fact, the results may not be as favorable to defendants as when the law permitted the courts to pass upon the question. Whether that be true or not, every defendant, where contributory negligence enters into the case, is treated alike.

It is next claimed the court erred in not directing a verdict for defendant on its motion at the close of the case and in not granting its motion for a new trial, "it appearing from the evidence that the only injury sustained by the plaintiff was a blood clot upon the brain . . . and the partial paralysis of the right leg, the right arm, the right muscles of the right abdomen and right side, resulting from said blood clot," whereas, "the injuries alleged in the complaint were the bruising . . . plaintiff's back and shoulders . . . injuring his spinal column, spinal cord and spinal nerves and . . . abdominal and thoracic viscera."

A variance between the proof and pleading was the basis of these motions. It is said in defendant's brief the injuries alleged were "from his (plaintiff's) neck down, but the evidence shows no injury sustained by plaintiff except above, the neck—the

blood clot in the brain." The evidence concerning the blood clot was brought out in the examination of Dr. Sweek, who was testifying as an expert on behalf of plaintiff. The doctor had stated, without objection, that the plaintiff "has partial paralysis of the right leg, and the right arm, and the right muscles of the right abdomen and right side. His whole right side is damaged. He is not completely paralyzed. He has the use, partial use of those muscles, but they are impaired within twenty-five and forty per cent." He was then asked:

"What, in your opinion, from your examination is the cause of that, the explanation of it?"
—to which he gave answer:

"I think he has a blood clot on the brain between the membranes and the skull. I judge it to be on the left side and that damages the right side."

The doctor then gave the reasons for his professional opinion and conclusions and all his testimony went in without any objection whatever from defendant.

Plaintiff's evidence as to the character of his injuries was in harmony with the allegations of his complaint. He testified that he felt sore for several days after the fall; that the soreness went out of his left side into his right side and continued in that side; that his right side felt sore all the way down; later it was numb "like when your foot is asleep"; that his right arm had almost gone back on him; that he had lost his grip in his right hand; that his right leg pained him and felt numb and weak; that he couldn't stand much on it; that he lost thirty-five to forty-five pounds in weight and was not able to do anything except herd his cows. True, plaintiff did not describe his affliction as paralysis nor does his complaint, but the location of the injuries on his body corresponds in a general way with the location given them in the complaint; and

the way in which they affected plaintiff's health, as told by himself and other witnesses, indicated that his affliction was a kind of creeping paralysis. In the complaint, his injuries were alleged to be to the spinal column, spinal cord, spinal nerves, abdominal and thoracic viscera. The experts, after familiarizing themselves with the history of his injuries and their effect upon his health, described his ailment as paralysis.

In view of this testimony of the plaintiff and the testimony of others as to the damaged condition of the right side of plaintiff's body, we hardly think defendant can be sincere in its assertion that there was no evidence supporting the allegations of injury and suffering. Indeed, there was much and strong evidence of the injuries alleged in the complaint. As against a motion for a directed verdict, it was, then, the duty of the court to let the case go to the jury. *Arizona Binghampton Copper Co.* v. *Dickson,* 22 Ariz. 163, 195 Pac. 538; *Hines* v. *Gale,* 25 Ariz. 65, 213 Pac. 395.

The competency of evidence is not properly triable upon a motion for an instructed verdict. Such motion challenges the sufficiency of the evidence to sustain the verdict and presupposes that all the evidence admitted by the court over or without objection is competent, relevant and material.

If the evidence concerning the blood clot was not within the issues, it was plainly the duty of learned counsel for the defendant to object to its admission or to move that it be stricken. They did neither. Defendant excuses its silence on the ground, first, that the answer was not responsive to the question; and, second, that it would have done no good to ask that it be stricken, since the damage had already been done. The answer was responsive to the question. It might have surprised the defendant as not being within the allegations of the complaint; but,

when the testimony was given, defendant knew it was outside of the issues and for that reason irrelevant and incompetent. Defendant permitted it to go into the record without giving the trial court an opportunity to rule upon it and states, as the reason for so doing, that the jury had heard the evidence, and more harm would be done by motion to strike than by leaving it in the record. If this contention be given its logical effect, every time incompetent and irrelevant testimony creeps into the record a mistrial would follow. The practice in this court, and in the courts generally, makes it the duty of a party dissatisfied with incompetent and irrelevant testimony to call the attention of the court thereto at the time of its introduction and secure a ruling thereon, or else "forever after hold his peace." To adopt the contention of the defendant, to the effect that it was under no duty to object to the testimony or to move to strike it, on the ground that it was outside of the issues and tended to enlarge the issues without notice, would be to encourage parties to hold the question that should then be decided in abeyance for the higher court and there claim a reversal. As a practical proposition, it may be that striking incompetent evidence does not, in fact, wholly prevent the jury from considering it, yet, in the administration of justice, a common-sense view of the situation must be taken. Unless some such rule is adopted, most every case tried would contain reversible error, for, however careful the court may be, error will creep in. In 2 R. C. L. 77, section 54, it is stated:

"Parties having the right to object or not, as they may see fit, to the admission of testimony that may be offered during the progress of the trial, if they fail to do so the testimony is to be weighed by the court or jury and given such probative force as it may be entitled to."

See, also, in 3 C. J. 816, section 731, a statement of the general rule as to the time and mode of making objections to the admission of evidence. Also, *Cooper* v. *Holder,* 24 Ariz. 415, 210 Pac. 690; *Farish* v. *Beebe,* 20 Ariz. 196, 179 Pac. 51; *Roberts* v. *Graham,* 6 Wall. (U. S.) 578, 18 L. Ed. 791; *Patrick* v. *Graham,* 132 U. S. 627, 33 L. Ed. 460, 10 Sup. Ct. Rep. 194 (see, also, Rose's U. S. Notes).

There was not only a failure on the part of defendant to raise any objection to the testimony as to injuries other than those enumerated in the complaint, but, on the contrary, defendant introduced controverting testimony and put in issue before the jury every bit of testimony of injuries offered by plaintiff. Plaintiff's expert witnesses were cross-examined as to the blood clot and paralysis, and the two physicians appointed by the court, and who examined plaintiff, testified in behalf of defendant that they discovered no indications of a blood clot or paralysis.

It appears the issues were extended or enlarged by common consent. The court and jury were led to believe by the conduct of the litigants that the character of the injuries detailed at the trial corresponded with those described in the complaint; that the proof in that respect and the allegations were in harmony, and not at variance. It brings us to this: Should a party that acquiesces in trying issues outside the pleadings be granted, after the risk and a losing fight, a new trial? The answer to this question is easily made and needs no other explanation than that defendant has chosen to litigate the matter in an informal manner and is bound thereby.

The plaintiff, at the presentation of motion for a new trial, asked permission to amend his complaint to conform with the proof, but the court for some reason denied the request. It should have been

allowed and we will consider it as having been made. This, we think, conforms with the rule laid down by this and other courts. *Pratt-Gilbert Co.* v. *Renaud*, 25 Ariz. 79, 213 Pac. 400; *National Bank* v. *Feeney*, 9 S. D. 550, 46 L. R. A. 732, 70 N. W. 874; *Chicago R. I. & P. R. Co.* v. *King*, 104 Ark. 215, 148 S. W. 1035; *Wilcox & White Organ Co.* v. *Lasley*, 40 Kan. 521, 20 Pac. 228; *Pulaski Gaslight Co.* v. *McClintock*, 97 Ark. 576, 32 L. R. A. (N. S.) 825, 134 S. W. 1189, 1199.

The fifth and last assignment is based upon an instruction on the question of damages. The instruction is a long one. For that reason only, we do not set it out. It is criticised as being much broader than the scope of the complaint. The instruction authorized the jury to consider, in arriving at their verdict, all the injuries sustained by plaintiff of which there was evidence, and, because there was evidence of injuries not alleged in the complaint, it is insisted the instruction was erroneous. If the jury's consideration is to be limited to the injuries alleged and not to those litigated, the defendant's point is well made. It seems to us if parties may, by mutual or common consent, enlarge the issues, logically the court may formulate instructions to conform with the evidence submitted under such consent. 2 Thompson on Trials, p. 1568, § 2310, after the author has discussed the view contended for by the appellant, proceeds as follows:

"This view ignores a principle which obtains in almost every situation in a civil trial, that the court is to disregard at every stage of the trial those errors or irregularities which it is competent for the party to waive, and which the party against whom they are committed does not object to at the time. The object of pleadings being merely to *notify* the opposite party of the ground of action or defense, if the party comes into court, it is not perceived why he may not *waive* the notice as in every other case,

although the pleading may not advise him of the case or defense which is actually tendered in the evidence. Several of the best courts in the country proceed upon this enlightened view. The sound view is believed to be that the instructions have no connection with the pleadings, except *through* the evidence. The 'jury find from the evidence,' and not from the pleadings. . . . Suppose, then, that facts come out in the evidence *broader* than those alleged in the pleadings, or otherwise *varying* from them. Is the judge to instruct the jury upon the whole evidence, or is he to limit his instructions to so much of the evidence as is within the scope of the pleadings? The proper answer is believed to be this: If neither of the parties has objected to the evidence on the ground of variance, the judge is to instruct the jury upon the whole evidence; the rule being, that a variance between the pleadings and the evidence is no ground of error, unless the evidence was objected to on this ground at the time it was offered.''

See, also, 38 Cyc. 1615; 2 Thompson on Trials, p. 1570, § 2311.

We are satisfied that the rule stated by Thompson is the one that should be adopted by this court.

We have carefully examined all of the assignments, and, finding no prejudicial error, we conclude the judgment of the lower court should be affirmed.·

McALISTER, C. J., and LOCKWOOD, J., concur.