2049

Helen L. WILSON, as Personal Representative of the Estate of Joe Wilson, Appellant v. Paul E. CHILDS, M.D., Respondent.

(434 S.E. (2d) 286)

Court of Appeals

432

*Fred Thompson, III*, of *Scardato & Thompson*, Charleston, and *William deForest Thompson*, of *Thompson & O'Brien*, Fort Lauderdale, FL, *for appellant.*

*C. Bradley Hutto* and *Charles H. Williams*, of *Williams & Williams*, Orangeburg, *for respondent.*

Heard May 10, 1993.

Decided July 6, 1993.

CURETON, Judge:

In this wrongful death and survival action, the Appellant, Helen Wilson, alleged medical malpractice by the Respondent, Dr. Paul Childs, in his treatment of her deceased husband. The jury returned a verdict for Childs. On appeal, Wilson asserts the jury's verdict should be vacated because a noncitizen served on the jury. She also appeals the trial court's refusal to exclude jurors for cause, its failure to permit additional *voir dire*, and its refusal to admit certain evidence. We affirm.

The decedent was diagnosed as diabetic by Childs in January 1985. Childs testified the decedent never requested a complete physical although one was offered. On April 1, 1986, Childs scheduled the decedent for an x-ray of the gastrointestinal tract after the decedent complained of rectal bleeding and other symptoms. On April 3rd, after examining the x-ray,

Childs prescribed the medication to treat duodenitis, and scheduled the decedent for another appointment on May 13th.

On April 22nd, while Childs was on vacation, the decedent was examined by another physician and immediately hospitalized. Tests revealed cancer of the colon, which had mestastasized to the decedent's lungs, bone, and liver. On May 13th, he died as a result of complications following surgery to his colon.

Wilson alleged Childs departed from the appropriate standard of care in his treatment of her husband. She further alleged the decedent's colon cancer would have been treatable if diagnosed in January 1985, when the decedent first visited Childs, or if diagnosed in the fall of 1985, when the decedent stated to several acquaintances, and allegedly to Childs, that he was experiencing rectal bleeding.

Among other defenses, Childs asserted decedent had been contributorily negligent by failing to report his rectal bleeding and other symptoms.

## I.

Wilson asserts the trial court erred by failing to grant her motion for a new trial when, approximately one month subsequent to trial, she discovered that a Syrian national and resident of Orangeburg County, Mohamed K Hloubi, had served on the jury. We disagree.

Relying on *Moore v. Jenkins*, 304 S.C. 544, 547, 405 S.E. (2d) 833, 835 (1991) for the proposition that denial of the right to trial by jury of one's peers is prejudicial as a matter of law, and upon S.C. Code Ann. § 14-7-130[1] for the proposition that a jury must be a United States citizen, she urges this Court to

---

[1] This section provides in part:

> In November . . . the South Carolina Department of Highways and Public Transportation shall furnish the State Election Commission a computer tape of . . . citizens of the United States residing in each county who hold a valid South Carolina driver's license. . . . In December . . . the State Election Commission shall furnish a jury list to [the] county jury commissioners consisting of a tape or list derived by merging the list of registered voters in the county with county residents appearing on the tape furnished by the department, but only those licensed drivers . . . who are eligible to register to vote may be included in the lists. Prior to furnishing the list, the commission shall make every effort to eliminate duplicate names and names of persons disqualified from registering to vote. . . . *As furnished to the jury commissioners by the State Election Commission, the list or tape constitutes the roll of eligible jurors in the county.* (Emphasis added.)

adopt a per se rule that a noncitizen's service on a jury is ground to vacate the jury's verdict. Alternatively, she argues that should this court not adopt a per se rule, we should nonetheless, hold she was not negligent in failing to discover Hloubi's disqualification prior to verdict.

■ It is unnecessary for this Court to reconcile the conflicting interpretations of § 14-7-130 urged by the parties. The service of an alien on a jury does not per se invalidate the jury's verdict. *Kohl v. Lehlback*, 160 U.S. 293, 301-02, 16 S.Ct. 304, 307, 40 L.Ed. 432 (1895) (objection to a juror's alienage maybe waived); *State v. Quarrel*, 2 S.C.L. (2 Bay) 150, 152 (1798) (although a juror may be challenged as a noncitizen, this challenge is waived once the juror is sworn); 47 Am. Jur. (2d) *Jury* § 217 (1969) (the right to challenge a juror's disqualification because of alienage may be waived); *cf State v. DeYoung*, 209 S.C. 482, 483-84, 41 S.E. (2d) 100, 101 (1947) (although juror was not a county resident as required by statute, this objection was waived when not made before impaneling of the jury); *Mew v. Charleston & Savannah Ry. Co.*, 55 S.C. 90, 95-96, 32 S.E. 828, 830 (1899) (although the state constitution required each juror to be a registered voter, this objection was waived when its assertion was untimely); *Gomez v. United States*, 245 F. (2d) 344, 346 (5th Cir. 1957) (when an objection to a juror relates to a statutory disqualification the objection may be waived); *Pogue v. State*, 429 So. (2d) 1159, 1161 (Ala. Crim. App. 1983) (although a juror who is not a county or state resident may be challenged for cause, this objection is waived once the jury is sworn); 50 C.J.S. *Juries* §§ 269, 270 (1947) (although a juror's disqualification is a ground to challenge him for cause, this challenge must ordinarily be urged before verdict).

---

Only South Carolina and United States citizens may register to vote. S.C. Code Ann. § 7-5-120 (1976) as amended.

S.C. Const. art. V, § 22 (formerly § 18) requires that "[e]ach juror must be a resident of this State and have such other qualifications as the General Assembly may prescribe." Prior to its amendment in 1989, this section required that "[e]ach juror must be a qualified elector...."

The statutory disqualifications for jury service do not include noncitizenship. S.C. Code Ann. §§ 14-7-810 throught 830 (1976) as amended.

The amendment to S.C. Const. Art. V, § 22, and S.C. Code Ann. § 14-7-130, were both effective on February 8, 1989.

In contrast to the circuit court, a juror in magistrate's court, under § 22-2-50, must be a qualified elector. S.C. Att'y Gen. Op. No. 89-139, 1989 S.C. Att'y Gen. Ann. Rep. 377, 379.

S.C. Code Ann. § 14-7-1030 provides objections to jurors not made prior to impanelment are waived. If an objection is made after impanelment, the objecting party must demonstrate he could hot have discovered the ground for the objection through due diligence. *Southern Welding Works, Inc. v K & S Constr. Co.*, 286 S.C. 158, 162, 332 S.E. (2d) 102, 105 (Ct. App. 1985); *see Thompson v. O'Rourke*, 288 S.C. 13, 14, 339 S.E. (2d) 505, 506 (1986).

On his juror information card, Hloubi stated his place of birth was "Aleppo, Syria," suggesting he could have been a foreign national. He returned this card to the court prior to trial, where it was available to the parties. Additionally, Wilson has not challenged Childs's assertion that the venire list prepared by the court, and available to the parties, listed Hloubi's race as "unknown." During *voir dire*, Wilson was able to observe the prospective jurors and state her objections to the trial judge. Although Wilson submitted *voir dire* questions to the trial judge, and was given an opportunity to submit additional questions, she did not inquire in regards to nationality. We, therefore, conclude that prior to impanelment of the jury, Wilson could have discovered Hloubi's nationality through the exercise of due diligence. *Southern Welding Works*, 286 S.C. at 163, 332 S.E. (2d) at 105.

Moreover, in response to a *voir dire* question, Hloubi stated he could give both parties an impartial trial. Wilson does not indicate otherwise. Accordingly, we conclude Wilson has not demonstrated she was prejudiced by Hloubi's service on the jury. S.C. Code Ann. § 14-7-1140 (1976) as amended.

## II.

Wilson alleges she was prejudiced by the trial court's failure to excuse several jurors for cause, and that the trial court erred by failing to permit additional *voir dire* of those members of the jury panel who had identified themselves as friends or former clients of Childs's attorneys. We disagree.

The trial judge's *voir dire* of the venire included all questions required by statute and submitted by the parties. At the beginning of *voir dire*, the trial judge excused one person at her own request because Childs had been her physician. Two prospective jurors stated they had been represented by

Childs's attorneys, and eight stated they were personally acquainted with these attorneys. All indicated they were able to give both parties a fair and impartial trial. Of the twenty whose names were drawn by the clerk, one, who worked at the same hospital as Childs, was excused for cause. Seven others had been previously represented by or were acquainted with Childs's attorneys. The trial court refused Wilson's request to excuse these seven prospective jurors for cause or to conduct additional *voir dire* to determine the nature of their relationships with Childs's attorneys. One juror who had previously been represented by Childs's attorneys and another juror acquainted with the attorneys were seated on the trial jury.

Wilson concedes the decision to disqualify a juror for bias is within the discretion of the trial judge. *Abofreka v. Alston Tobacco Co.*, 288 S.C. 122, 125, 341 S.E. (2d) 622, 624 (1986) (refusal to disqualify jurors who had been patients of plaintiff physician was within the trial court's discretion). She also concedes there is no absolute rule a juror is disqualified because of the juror's relationship with an attorney in the case. *Thompson*, 288 S.C. at 15, 339 S.E. (2d) at 506. However, she asserts these authorities and others involved at most two potential jurors with a disqualifying attribute. She also asserts the trial court is not bound to accept a juror's declaration of impartiality but must look to all circumstances to discern prejudice. *Gray v. Bryant*, 298 S.C 285, 288, 379 S.E. (2d) 894, 896 (1986) (the trial court abused its discretion by refusing to grant a new trial when a juror had failed to disclose she was a patient of the defendant physician and she was predisposed against malpractice cases).

Because the jurors voluntarily disclosed their potentially disqualifying relationships and stated their ability to be impartial, there is sufficient evidence to support the trial judge's refusal to exclude these jurors for cause. *Abofreka*, 288 S.C. at 125, 341 S.E. (2d) at 624 (there is no abuse of discretion when the jurors have stated they are able to give the parties a fair trial); *State v. Spann*, 279 S.C. 399, 402, 308 S.E. (2d) 518, 520 (1983); *State v. Thompson*, 278 S.C. 1, 9-10, 292 S.E. (2d) 581, 586 (1982) (an appellate court will rely on the wisdom and judgment of the trial judge, who was

able to observe the character and demeanor of the jurors, "unless the record firmly establishes an abuse of discretion."). Additionally, Wilson has identified no circumstances which suggest a juror was dishonest in his declaration of impartiality. *See State v. Smart*, 278 S.C. 515, 522, 299 S.E. (2d) 686, 690 (1982). Accordingly, we find no abuse of discretion.

We find no reason to apply a different rule when several jurors have disclosed a prior relationship with counsel, although the number of these jurors may exceed the four peremptory strikes allowed each party. The proper focus of our inquiry is whether the trial judge refusal to exclude each juror was in each instance supported by the evidence.

Wilson argues she was prejudiced in the exercise of her peremptory strikes by the trial court's refusal to permit further *voir dire* after the panel of twenty was drawn. She contends that although the trial judge is given discretion in regards to the conduct of *voir dire*, S.C. Code Ann. § 14-7-1020 directs the court, on the motion of either party, to inquire as to each juror's impartiality.

The responsibility of the trial court is to focus the scope of *voir dire* examination as described in S.C. Code Ann. § 14-7-1020. The manner in which these questions are pursued and the scope of any additional *voir dire* is within the sound discretion of the trial court. *State v. Lucas*, 285 S.C. 37, 39, 328 S.E. (2d) 63, 64-65 (1985) (*voir dire* regarding the jurors' possible association with the solicitor's office was outside the scope of § 14-7-1020); *Crosby v. Southeast Zayre, Inc.*, 274 S.C. 519, 521-22, 265 S.E. (2d) 517, 519 (1980) (the refusal to make *any* inquiry regarding the possible bias of jurors is reversible error); *Norris v. Ferre*, — S.C. —, 432 S.E. (2d) 491 (1993) (Rule 47(a), SCRCP, provides the trial judge broad discretion in regards to *voir dire*). The trial court is not required to ask every question submitted by counsel. *State v. Middleton*, 266 S.C. 251, 257, 222 S.E. (2d) 763, 765 (1976) (citing *State v. Britt*, 237 S.C. 293, 117 S.E. (2d) 379 (1960) (determination of when *voir dire* shall cease and refusal to ask additional questions proposed by parties is within the discretion of the trial judge)).

In rejecting the additional *voir dire* requests submitted by Wilson's counsel, the trial judge properly exercised

his discretion in regards to the scope of *voir dire*. Additionally, we discern no prejudice. There is no reversible error in the impaneling of a jury unless it appears that the objecting party was prejudiced. *Moore*, 304 S.C. at 547, 405 S.E. (2d) at 835; 50 C.J.S. *Juries* § 277 (1947) (prejudice will not be presumed).

## III.

Wilson asserts the trial court erred by refusing to admit the testimony of several witnesses regarding statements made by Childs to the decedent. We disagree.

The trial court allowed the testimony of several witnesses regarding statements made by the decedent in which he described his symptoms to them and related what he had told Childs. However, it refused to admit testimony by these witnesses as to statements in which the decedent described what Childs allegedly had told the decedent.

Wilson asserts the statements made by the decedent regarding what Childs allegedly had told him were improperly excluded because they reflected the decedent's state of mind or physical condition when made. *See Ervin v. Myrtle Grove Plantation*, 206 S.C. 41, 46, 32 S.E. (2d) 877, 879 (1945); *Welch v. Brooks*, 44 S.C.L. (10 Rich.) 123, 125 (1856). However, hearsay within hearsay, or "double hearsay," is excluded unless each part of the combined statement falls within an exception to the hearsay rule. *Bain v. Self Memorial Hosp.*, 281 S.C. 138, 145, 314 S.E. (2d) 603, 607-08 (Ct. App. 1984) (adopting Rule 805 of the Federal Rules of Evidence). Accordingly, because Wilson did not offer evidence to suggest that Childs's statements qualify as *res gestae*, and because what Childs allegedly said to the decedent is not indicative of the decedent's state of mind, the statements were properly excluded.

The trial court also excluded testimony by Rose Ann Leiner, the decedent's daughter, that shortly before his death, the decedent stated he had told Childs about his rectal bleeding. The trial court reasoned this testimony was hearsay and was not admissible as a present-sense impression because the decedent had made this statement in reflection of past events. The trial judge's ruling is supported by the evidence. We find no abuse of discretion. *See Powers v.*

*Temple*, 250 S.C. 149, 162, 156 S.E. (2d) 759, 765 (1967).

Finally, Wilson asserts because Childs alleged in his answer that the decedent had assumed a known risk or had withheld information from his physician, the statements made by the decedent regarding what Childs allegedly had told him were admissible not for their truth, but to show the decedent did not intend to voluntarily assume the risk or to intentionally withhold information.[2] Because Childs abandoned his affirmative defense of assumption of the risk prior to trial, we reject this and all remaining assertions as being without merit. S.C. Code Ann. § 14-8-250 (1976) as amended; Rule 220(b)(2), SCACR.

Accordingly, the decision of the trial court is

Affirmed.

SHAW and GOOLSBY, JJ., concur.

---

[2] At trial, she argued these statements were admissible because Childs had asserted the decedent's contributory negligence in assuming a known rick or intentionally withholding information from his physician. (emphasis added). Although she frames this argument as contributory negligence, its focus is not the decedent's contributory negligence, but "his lack of intent to voluntarily assume a risk, or to intentionally withhold information from [Childs]."