501 S.E.2d 754

**Johnny Mae WALL, Appellant,**

v.

**Ernest KEELS and Santee Electric Cooperative, Respondents.**

**No. 2848.**

Court of Appeals of South Carolina.

Heard Jan. 8, 1998.

Decided June 1, 1998.

312

Edward L. Graham, of Zeigler & Graham, Florence, for appellant.

G.D. Morgan, Jr., and Hoover C. Blanton, both of McCutchen, Blanton, Rhodes & Johnson, Columbia, for respondents.

HOWELL, Chief Judge:

Johnny Mae Wall brought suit against Santee Electric Cooperative and Ernest Keels, seeking damages for injuries she suffered when the car she was driving was struck by a Santee truck driven by Ernest Keels. The jury apportioned 50% of the responsibility for the accident to the respondents, but awarded no damages to Wall. The trial court granted Wall's motion for additur, awarding her $2,689.02, which amounted to 50% of the portion of the stipulated special damages the trial court believed it could consider.[1] Wall appeals. We reverse and remand for a new trial.

---

1. During the course of the trial, the parties stipulated that Wall incurred $2,682.68 in medical expenses and that she suffered $2,572.80 in property damage to her car and $986.27 in lost wages. When granting Wall's additur motion, the trial court included only two days

## I.

Wall raises several issues on appeal, but we find it necessary to consider only her arguments concerning the scope of voir dire and the propriety of the respondents' closing argument.

## A.

█ Because the case was tried in Williamsburg County, within Santee's service area, Wall recognized that many of the potential jurors would be Santee customers. ·Accordingly, Wall submitted to the trial court extensive voir dire requests seeking information about the potential jurors' degree of interest and involvement in Santee's affairs.

The trial court refused to ask most of the questions submitted by Wall. Instead, the court asked whether any members of the venire were employees of Santee or had attended Santee's annual stockholders meetings. The trial court assumed that most of the potential jurors were customers of Santee, stating to the jury:

> I live outside the town limits. And you receive electric service from Santee Co-op. Rather than have everyone identify themselves, receive electric and pay a bill every month, I want to ask this question. Are any of you, or have any of you ever served as a director or any other title, if you want to call it that, for lack of a better term, with Santee Co-op? I mean, have you ever had any special title to Santee Co-op, a director or otherwise?

> .   .   .   .   .

> ... Let's just have a show of hands who are Santee's line? All right. Thank you. I assumed that. And that's the reason I didn't want to ask that question to each one of you individually.

The court then asked the members of the venire whether they could be fair and impartial, notwithstanding the fact that they

---

of lost wages, refusing to include the other three weeks of lost wages sought by Wall. The trial court concluded that, because the three weeks of missed work occurred more than six months after the accident, the jury could have determined that the three weeks of lost wages were not caused by the accident.

received electric service from Santee. All members of the venire indicated that they could be fair and impartial.

The trial court did not require the venire members receiving service from Santee to identify themselves by name, as requested by Wall. Nor did the court ask Wall's question about whether any of the prospective jurors subscribed to Santee's "Living in South Carolina" publication and how often they read it; whether any of the prospective jurors' family members had been a member of the Board of Directors or Board of Trustees for an electric cooperative; or whether any of the prospective jurors had a personal, social, church or employment relationship with any member of either board.

## B.

On appeal, Wall contends that the trial court abused its discretion by conducting such a limited voir dire of the jury venire. Wall centers her argument around the fact that those who receive service from a rural cooperative like Santee are much more than mere customers. Instead, they are members of the cooperative who receive proportionate rebates of any excess revenues. *See* S.C.Code Ann. § 33–49–460 (1990) (providing for the distribution of excess revenues to members of rural electric cooperatives); *see also Bush v. Aiken Elec. Co-op., Inc.,* 226 S.C. 442, 445, 85 S.E.2d 716, 717 (1955) (generally describing operation of electric cooperatives). Thus, Wall argues that cooperative members are more akin to stockholders in a corporation, who are disqualified from sitting as jurors in actions involving the corporation. *See Southern Bell Tel. & Tel. Co. v. Shepard,* 262 S.C. 217, 221, 204 S.E.2d 11, 12 (1974) ("A stockholder in a corporation is incompetent to serve as a juror in a case in which the corporation is a party or has any pecuniary interest.").

In South Carolina, the disqualification for cause of potential jurors is governed by S.C.Code Ann. § 14–7–1020 (Supp.1997), which provides:

The court shall, on motion of either party in the suit, examine on oath any person who is called as a juror to know whether he is related to either party, has any interest in the cause, has expressed or formed any opinion, or is sensible of any bias or prejudice therein, and the party objecting to the

juror may introduce any other competent evidence in support of the objection. If it appears to the court that the juror is not indifferent in the cause, he must be placed aside as to the trial of that cause and another must be called.

Thus, if membership in an electric or other cooperative involved in a case amounts to an "interest in the cause" such that the cooperative member "is not indifferent in the cause," section 14–7–1020 mandates that members of the cooperative be removed from the venire upon request by a party.

While this issue has not been addressed in South Carolina, it has been considered in other states. Some states hold that members of cooperatives, by virtue of their participation in the cooperative's revenues, are *per se* incompetent to serve as jurors in cases involving the cooperatives. *See Lowman v. Georgia*, 197 Ga.App. 556, 398 S.E.2d 832 (1990) (members of electric cooperative are disqualified from sitting as jurors in criminal prosecution for damage to property owned by the cooperative); *Thompson v. Sawnee Elec. Membership Corp.*, 157 Ga.App. 561, 278 S.E.2d 143, 145 (1981) ("It is clear that the members of an electric membership corporation are in the same position as the stockholders of a corporation ... as regards their right to share in the net earnings of the business. Accordingly, we conclude that the members of an electric membership corporation are disqualified from service as jurors in the trial of a case in which damages are sought from the corporation.") (citation omitted); *Ozark Border Elec. Coop. v. Stacy*, 348 S.W.2d 586, 591 (Mo.Ct.App.1961) ("[A] member of a rural electric co-operative ..., whose status is akin to that of a stockholder and whose interest, financial and otherwise, is no more remote or minute and certainly no less active or live than that of many stockholders, is disqualified to sit as a juror in a suit to which the co-operative is a party."); *State v. Thomlinson*, 78 S.D. 235, 100 N.W.2d 121, 122 (1960) (reversible error to allow member of cooperative association to sit on jury in prosecution for burglary of association's property); *Salt River Valley Water Users' Assoc. v. Berry*, 31 Ariz. 39, 250 P. 356, 357–58 (1926) (treating members of association as ordinary corporate stockholders and disqualifying them from service on jury in case involving association); *Peanut Growers' Exch., Inc. v. Bobbitt*, 188 N.C. 335, 124 S.E. 625, 625 (1924) (trial court erred in refusing to strike for cause a juror

who was a member of the plaintiff association, notwithstanding juror's assertion that he would be fair and impartial, because "juror was a member of the plaintiff association and necessarily interested in the litigation").

Other states, however, refuse to apply a *per se* rule of exclusion, instead requiring that actual rather than presumed bias of the potential juror be established through "individualized inquiry as to the nature of the alleged excluding interest." *Larson v. Williams Elec. Co-op., Inc.*, 534 N.W.2d 1, 4 (N.D. 1995); *see also Cassady v. Souris River Tel. Co-op.*, 520 N.W.2d 803, 806 (N.D.1994) ("[M]ere membership in a cooperative association does not signify an interest sufficient to automatically disqualify a person from serving as a juror in a case involving the cooperative. To disqualify a prospective juror, a challenger must establish an actual bias, rather than presumed bias, on the part of the prospective juror."); *Garcia v. Coast Elec. Power Assoc.*, 493 So.2d 380, 384–85 (Miss.1986) ("In a largely rural area such as exists in Mississippi, all people outside municipalities are supplied by electrical cooperatives. Any pecuniary benefit the customer or member receives is practically nil. . . . Mississippi jurisprudence is not ready to adopt or establish [a *per se* rule of disqualification]. We have adequate law and authority which will provide for the obtaining of a fair and impartial jury without such a per se disqualification for cause."), *overruled in part on other grounds by Whittley v. City of Meridian*, 530 So.2d 1341 (Miss.1988) and *Robles v. Gollott & Sons Transfer & Storage, Inc.*, 697 So.2d 383 (Miss.1997).

Nonetheless, we need not in this case decide whether membership in a cooperative association operates as an automatic disqualification from jury service. At trial, Wall did not seek a blanket for-cause disqualification from the venire of all Santee members. Instead, through her proposed voir dire, Wall sought additional information to determine whether any potential jurors, by virtue of their membership in Santee, were in fact biased against Wall's claim.

Thus, the essence of Wall's argument on appeal is that, had she been able to obtain the information she requested, she would have had a basis to seek to strike individual members of the venire for cause, or she would have used her peremptory

strikes more intelligently.[2]  Accordingly, Wall contends that the trial court abused its discretion by limiting the scope of the voir dire.  Given the unique circumstances of this case, we agree.[3]

■  As noted above, S.C.Code Ann. § 14–7–1020 requires the trial court, on motion of a party, to examine the venire to determine if any potential juror is "related to either party, has any interest in the cause, has expressed or formed any opinion, or is sensible of any bias or prejudice therein."  The "manner in which these questions are pursued and the scope of any additional *voir dire* is within the sound discretion of the trial court."  *Wilson v. Childs*, 315 S.C. 431, 438, 434 S.E.2d 286, 291 (Ct.App.1993); *accord Crosby v. Southeast Zayre, Inc.*, 274 S.C. 519, 521, 265 S.E.2d 517, 519 (1980) ("[T]he conduct of voir dire examinations of jurors is within the

---

2. We do not mean to suggest that, had any juror responded to these additional questions in the affirmative, the trial court would have been required to strike the juror for cause.  Instead, the information that would have been obtained through the additional voir dire could have been used by Wall when determining whether any potential juror appeared to be involved or interested in the operation of the cooperative to such a degree that a motion to exclude for cause might be warranted.  How the trial court should rule on any such motion, of course, would be left to the court's discretion.  *See, e.g., Abofreka v. Alston Tobacco Co.*, 288 S.C. 122, 125, 341 S.E.2d 622, 624 (1986) (Whether a juror should be disqualified for cause is a decision within the trial court's sound discretion).

3. The respondents contend there is no evidence in the record that most of the venire were Santee members and that there is no evidence in the record establishing that any Santee members actually served on the jury.  We disagree.  As noted above, the trial court asked the venire for "a show of hands who are Santee's line?  All right.  Thank you.  I assumed that.  And that's the reason I didn't want to ask that question to each one of you individually."  It is apparent from the court's statements that, as Wall contends, most of the potential jurors were Santee customers.  The inability to determine precisely how many Santee customers actually served on the jury stems from the trial court's refusal to require the Santee customers to identify themselves by name, as requested by Wall. Because Wall did everything she could do to preserve the record, we decline to allow the trial court's error to prevent us from considering the issue raised by Wall. *Cf. City of Columbia v. Myers*, 278 S.C. 288, 289, 294 S.E.2d 787, 788 (1982) ("There were jurors who were residents of the City of Columbia, but the record fails to reveal the exact number.  The probability of prejudice was such as to require a reversal.").

discretion of the court."). Thus, as a general rule, the trial court is not required to ask all voir dire questions submitted by the attorneys. *Norris v. Ferre*, 315 S.C. 179, 432 S.E.2d 491 (1993), *cert. denied* (March 4, 1994); *Wilson*, 315 S.C. at 438, 434 S.E.2d at 291; *see also* Rule 47(a), SCRCP (When the trial court conducts the voir dire, "the court shall permit the parties or their attorneys to supplement the examination by such further inquiry *as it deems proper* or shall itself submit to the prospective jurors such additional questions submitted by the parties or their attorneys *as it deems proper*.") (emphasis added). In this case, however, given the number of potential jurors who were Santee customers and their status as owners of the cooperative, we conclude that the trial court's refusal to ask the voir dire questions submitted by Wall amounted to an abuse of discretion.

█  Parties in a case, through the trial court, " 'have a right to question jurors on their voir dire examination not only for the purpose of showing grounds for a challenge for cause, but also, within reasonable limits, to elicit such facts as will enable them intelligently to exercise their right of peremptory challenge.' " *State v. Gulledge*, 277 S.C. 368, 370, 287 S.E.2d 488, 490 (1982). In this case, through the voir dire rejected by the trial court, Wall sought to determine which potential jurors were more actively involved or interested in Santee's operation and management. Thus, while Wall was willing to accept Santee members on the jury, she sought to exclude, either for cause or through her peremptory strikes, the potential jurors who were more likely to have actual bias against her claim. By refusing to even identify by name the potential jurors who received power from Santee, the trial court prevented Wall from identifying those jurors who Wall could argue should be excused for cause, and likewise prevented Wall from intelligently exercising her peremptory strikes.[4]

---

4. We find the respondents' arguments that Wall waived any right to challenge the jury composition by failing to object to be without merit. At the conclusion of the voir dire, the trial court stated, "Gentlemen, I'm going to give the Court Reporter your respective *voir dire*. I think I've done very close to what you want. I feel like I've covered it adequately. If I haven't and you object, I know you object. And I'm making a record of it for you." While it would have been preferable for the trial court to allow counsel for Wall to state his objection to the voir dire on the record, we believe the portion of the proceedings quoted

## II.

■ The prejudice flowing from the improperly limited voir dire becomes even more apparent when Santee's closing argument is considered. In apparent response to Wall's argument in closing that her suit was really against Santee and not Keels, Santee argued the following:

Something that he just mentioned that this is not a suit against Ernest Keels. This is a suit against the power company. And I think every sentence that he uttered these two days had something to do with the power company. The power company and the power company did this. He never once mentioned Mr. Keels. He never once said anything about Mr. Keels, because he's trying to say well this is the power company. This is the power company.

. . . . .

They keep naming again the power company. But as part and addition as a defendant, the Co-op is a defendant in this case. As everyone knows, or at least I didn't until I started representing Ernest and the Co-op in this case, is that, the Co-op kind of started years ago. Farmers started it out in little areas, because the regular power companies didn't have—wouldn't put power out in those areas. So the farmers got together, banded together and started their own power company. And it's owned by the people, the customers, on the line. People that have power.

above makes it sufficiently clear that counsel for Wall did object to the voir dire and that the trial court noted the objection. Moreover, contrary to Santee's argument, the failure of counsel for Wall to move to strike any of the jurors for cause does not render the voir dire issue unpreserved for appeal. *See* S.C.Code Ann. § 14–7–1070 (Supp.1997) (generally requiring strikes for cause to be made before the striking of the jury). Wall is not challenging on appeal the trial court's failure to dismiss a juror for cause; thus, the fact that she did not move to strike any jurors for cause does not prevent us from considering the sufficiency of the voir dire, an issue that is properly before this Court. Similarly without merit is Santee's argument that Wall's appellate argument is procedurally barred because she did not challenge any juror on the grounds that the juror was a customer of Santee. As noted above, Wall was willing to accept Santee customers as jurors provided she had sufficient information to exclude those jurors who were actually biased against her claim. The trial court's refusal to engage in a more comprehensive voir dire prevented Wall from being able to determine which jurors were actually biased.

And that's how the Co-op started. And that's what the Co-op is. This is a suit against the Co-op. *It's a suit against the members of the Co-op, people . . . who are on the line.* (Emphasis added).

Wall objected to this argument, but the trial court overruled the objection. Santee then continued, stating, "Thank You, your Honor. And that's what this suit is about when Santee is named. *It is a suit against the customers of the members of the Co-op.*" (Emphasis added).

On appeal, Wall argues that Santee's argument appealed to the economic interest of the jurors and invited the jury to base its verdict on considerations not relevant to the merits. Wall contends the ploy must have been effective, given the jury's finding of liability on the part of Santee, but its refusal to award Wall any damages, even in the face of more than $5,000 in stipulated damages. Under the circumstances in this case, we agree.

It is improper to make a closing argument calculated to unfairly arouse the jury's compassion or prejudice or to appeal to jurors' personal biases. *See, e.g., Hoeffner v. The Citadel,* 311 S.C. 361, 366, 429 S.E.2d 190, 193 (1993) ("Arguments by counsel which invite the jury to base its verdict on considerations not relevant to the merits of the case are improper."); *Gathers v. Harris Teeter Supermarket, Inc.,* 282 S.C. 220, 231, 317 S.E.2d 748, 755 (Ct.App.1984) ("In a closing argument to the jury, an attorney may not make such remarks which are unfairly calculated to arouse passion or prejudice."); *cf. State v. Copeland,* 321 S.C. 318, 324, 468 S.E.2d 620, 624 (1996) ("A solicitor's closing argument must not appeal to the personal biases of the jurors. In addition, the argument may not be calculated to arouse the jurors' passions or prejudices, and its content should stay within the record and reasonable inferences to it.").

In *City of Columbia v. Myers,* 278 S.C. 288, 294 S.E.2d 787 (1982), the City sued the defendant seeking recovery for damages caused to one of the City's fire trucks after a collision with the defendant's car. In closing argument, the City's attorney argued that if the jury did not return a verdict in favor of the City, then the taxpayers of the City would bear the cost of the repairs to the fire truck. The trial court

overruled the defendant's objection, ruling in the presence of the jury that the argument was proper. *Id.* at 289, 294 S.E.2d at 788. The Supreme Court reversed, concluding:

> The argument that the failure to render a verdict for the City would cause the damages to be paid from tax funds had no relevance to the merits of the case. It constituted an appeal to the self-interest of the jurors as taxpayers and was of such a prejudicial nature as to require reversal, especially where, as here the trial judge stated in the presence of the jury that this was proper argument. The ruling of the trial judge was tantamount to telling the jury that such argument of counsel was relevant to the issues and could be considered by them in reaching their verdict.

*Id.*

While the closing argument in this case was perhaps somewhat less direct than that in *Myers*, we nonetheless conclude that the argument was improper. Given that the jury included cooperative members who would ultimately bear the cost, through increased rates or decreased distributions of excess revenues, of any verdict against Santee, we believe Santee's closing argument went far beyond simply responding to Wall's argument, and instead unfairly appealed to the economic self-interests of the cooperative members sitting on the jury.

## III.

The determination of the proper scope of voir dire and conduct of closing arguments are matters left to the sound discretion of the trial court. *See Wilson v. Childs,* 315 S.C. 431, 438, 434 S.E.2d 286, 291 (Ct.App.1993) (The manner in which the trial court asks the statutorily-required questions and the scope of any additional voir dire is within the sound discretion of the trial court.); *Howle v. PYA/Monarch, Inc.,* 288 S.C. 586, 599, 344 S.E.2d 157, 164 (Ct.App.1986) ("It has long been settled that closing arguments and objections thereto are left largely to the sound discretion of the trial judge 'who is on the scene and in much better position than an appellate court to judge as to what is improper argument under the circumstances.' "). Thus, in another case, either the error in limiting the voir dire or the error in allowing the improper jury argument, standing alone, may not have com-

pelled reversal. *See, e.g., Carlyle v. Tuomey Hosp.,* 305 S.C. 187, 192, 407 S.E.2d 630, 633 (1991) ("Proof that an error caused the appellant prejudice is a prerequisite to reversal based on error where the trial court's discretion is involved."); *McKissick v. J.F. Cleckley & Co.,* 325 S.C. 327, 350, 479 S.E.2d 67, 78 (Ct.App.1996) ("An appellant seeking reversal must show error and prejudice ."). In this case, however, given the inherent difficulty Wall faced in selecting a neutral jury, we conclude that the combination of the trial court's errors requires us to reverse and remand for a new trial.

We recognize that in cases involving local cooperatives as the plaintiff or defendant, it will be likely that many, if not most, of the prospective jurors will be members of the cooperative. We do not mean to suggest that, in those cases, the trial court must ask all voir dire submitted by the parties or must strike for cause all members of the cooperative if so requested by one of the parties. The resolution of the case before us does not require the adoption of any bright-line rule, and our opinion should not be read as adopting any such rule. Instead, we believe it sufficient at this point to caution the bench to be mindful of the real potential for bias in cases involving local cooperatives. To this end, we encourage trial judges to fashion a voir dire that gives the parties sufficient information about the prospective jurors to determine whether a strike for cause might be appropriate or whether a peremptory strike should be used against a particular juror. Likewise, trial judges should keep in mind the jurors' relationships with the cooperative when ruling on issues arising at trial, sustaining objections that might otherwise be overruled and giving careful curative instructions if necessary to ensure that the parties receive a fair trial. Such precautions should ensure that all parties in a case involving local cooperatives will receive a fair trial.

Accordingly, for the foregoing reasons, we hereby reverse and remand for a new trial.

**REVERSED and REMANDED.**

CURETON and HOWARD, JJ., concur.