527 S.E.2d 119

**Michael ALSTON, Appellant,**

**v.**

**BLACK RIVER ELECTRIC COOPERATIVE, Respondent.**

**No. 3105.**

Court of Appeals of South Carolina.

Heard Nov. 3, 1999.

Decided Jan. 24, 2000.

Rehearing Denied March 25, 2000.

544

Robert P. Wood, of Rogers, Townsend & Thomas, of Columbia, for appellant.

Hoover C. Blanton and Pope D. Johnson, III, both of McCutchen, Blanton, Rhodes & Johnson, of Columbia, for respondent.

CONNOR, Judge:

Michael Alston sued Black River Electric Cooperative, alleging Black River's negligence caused a fire at his house. A jury returned a verdict in favor of Black River. Alston appeals, arguing the trial court erred in refusing to strike all jurors who were members of Black River for cause. We affirm.

Alston owned a lot that was served by Black River. While his house was under construction, Alston asked Black River to move a power line that crossed over it. The power line was never moved. During a storm on November 17, 1994, the power line broke, causing a fire which destroyed the house.

During voir dire, seven jurors on the twenty juror strike list identified themselves as customers of Black River. Two of the three jurors on the alternate strike list were Black River customers. Alston moved to strike those jurors for cause. The trial judge refused. However, Alston did not attempt to prove actual bias through further voir dire.

Alston subsequently struck two jurors who were Black River customers and two jurors who were not. Black River struck one Black River customer. Two of the three jurors on the alternate strike list were Black River customers, and Alston struck the alternate who was not a customer. Four Black River customers ended up serving on the jury. The alternate did not participate.

## DISCUSSION

The only issue on appeal is whether the trial court erred in refusing to excuse Black River customers for cause.

Section 14–7–1020 of the South Carolina Code grants the trial judge discretion to disqualify jurors for cause. It provides:

The court shall, on motion of either party in the suit, examine on oath any person who is called as a juror to know whether he is related to either party, has any interest in the cause, has expressed or formed any opinion, or is sensible of any bias or prejudice therein, and the party objecting to the juror may introduce any other competent evidence in support of the objection. **If it appears to the court** that the juror is not indifferent in the cause, he must be placed aside as to the trial of that cause and another must be called.

S.C.Code Ann. § 14–7–1020 (Supp.1998) (emphasis added).

We recently discussed the issue of whether customers of an electric cooperative must be removed for cause. *Wall v. Keels,* 331 S.C. 310, 501 S.E.2d 754 (Ct.App.1998). Because the question was a novel one in South Carolina, we reviewed how other states have ruled on this issue. Some states hold that customers of cooperatives, by virtue of their participation in the cooperative's revenues, are per se incompetent to serve as jurors in cases involving the cooperatives.[1] Essentially,

---

1. *See Lowman v. Georgia,* 197 Ga.App. 556, 398 S.E.2d 832 (1990) (members of electric cooperative are disqualified from sitting as jurors in criminal prosecution for damage to property owned by the cooperative); *Thompson v. Sawnee Elec. Membership Corp.,* 157 Ga.App. 561, 278 S.E.2d 143, 145 (1981) ("It is clear that the members of an electric membership corporation are in the same position as the stockholders of a corporation ... as regards their right to share in the net earnings of the business. Accordingly, we conclude that the members of an electric membership corporation are disqualified from service as jurors in the trial of a case in which damages are sought from the corporation." (citation omitted)); *Ozark Border Elec. Coop. v. Stacy,* 348 S.W.2d 586, 591 (Mo.Ct.App.1961) ("[A] member of a rural electric co-operative ... whose status is akin to that of a stockholder and whose interest, financial and otherwise, is no more remote or minute and certainly no less active or live than that of many stockholders, is disqualified to sit as a juror in a suit to which the co-operative is a party."); *South Dakota v. Thomlinson,* 78 S.D. 235, 100 N.W.2d 121 (1960) (holding a member of cooperative association had a disqualifying interest and should not have been allowed to sit on jury in prosecution for burglary of association's property); *Salt River Valley Water Users' Assoc. v. Berry,* 31 Ariz. 39, 250 P. 356 (1926) (treating members of association as ordinary corporate stockholders and disqualifying them from service on jury in case involving association); *Peanut Growers' Exch. v. Bobbitt,* 188 N.C. 335, 124 S.E. 625, 625 (1924) (holding trial court erred in refusing to strike for cause a juror who was a member of the plaintiff association, notwithstanding juror's assertion that he could be fair and impartial, because "juror was a member of the plaintiff association and necessarily interested in the litigation").

cooperative customers are excluded because of implied bias. Other states, however, reject a per se rule of exclusion. Rather, these states require a party to establish a juror's actual bias through questioning.[2]

In *Wall* we declined to decide whether a cooperative customer was per se disqualified from serving on a jury when the cooperative association was a party. The appellant in *Wall* did not seek a per se disqualification of the customers of the cooperative. Instead, he sought proposed voir dire to determine whether potential jurors, because of their membership in the cooperative association, were actually biased against him. Under the circumstances of the case,[3] we held the trial court abused its discretion by rejecting the proposed voir dire. However, we limited our holding:

> We do not mean to suggest that . . . the trial court must ask all voir dire submitted by the parties or must strike for cause all members of the cooperative if so requested by one of the parties. The resolution of the case before us does not require the adoption of any bright-line rule, and our opinion should not be read as adopting any such rule.

*Wall*, 331 S.C. at 322, 501 S.E.2d at 760.

We, therefore, left for another day the decision of whether to adopt a per se rule excluding members of cooperative

---

**2.** *See Larson v. Williams Elec. Coop.*, 534 N.W.2d 1, 4 (N.D.1995) ("Instead of a blanket disqualification of an entire group of potential jurors based on the mere existence of a relationship, [the North Dakota statute on challenges for cause] requires an analysis of the extent of any individual interest in the outcome of the lawsuit that may exist because of the relationship."); *Cassady v. Souris River Tel. Coop.*, 520 N.W.2d 803, 806 (N.D.1994) ("[M]ere membership in a cooperative does not signify an interest sufficient to automatically disqualify a person from serving as a juror in a case involving the cooperative. To disqualify a prospective juror, a challenger must establish an actual bias, rather than a presumed bias, on the part of the prospective juror."); *Garcia v. Coast Elec. Power Assoc.*, 493 So.2d 380, 384 (Miss.1986) (holding that existing law and authority will adequately "provide for the obtaining of a fair and impartial jury without such a per se disqualification for cause"), overruled in part on other grounds by *Whittley v. City of Meridian*, 530 So.2d 1341 (Miss.1988) and *Robles v. Gollott & Sons Transfer & Storage, Inc.*, 697 So.2d 383 (Miss.1997).

**3.** The cooperative association made an improper closing argument by unfairly appealing to the economic self-interest of the cooperative members sitting on the jury.

associations from the venire. The day for that decision has now come.

The South Carolina Supreme Court has held "[t]hat a stockholder in a company which is a party to a lawsuit is incompetent to sit as a juror." *Southern Bell Tel. & Tel. Co. v. Shepard*, 262 S.C. 217, 222, 204 S.E.2d 11, 12 (1974) (quoting *Chestnut v. Ford Motor Co.*, 445 F.2d 967, 971 (4th Cir.1971)). Alston asserts customers of an electric cooperative should similarly be automatically disqualified for cause.

In contrast to a stockholder, other jurisdictions have recognized that public utility customers, which are more analogous to cooperative customers than investment-minded shareholders, are not presumptively biased in favor of the utility. *See In Re Virginia Elec. & Power Co.*, 539 F.2d 357 (4th Cir.1976) (holding trial judge was not required to recuse himself from case where electric utility that served him claimed $152,000,-000 in damages, the recovery of which would result in a potential refund to the judge of $70 to $100); *City of Cleveland v. Cleveland Elec. Illuminating Co.*, 538 F.Supp. 1240 (N.D.Ohio 1980) (denying motion to exclude from jury venire all electric power customers of either the City or the Cleveland Electric Illuminating Co., but intending to conduct comprehensive voir dire examination to determine whether the veniremen have, or believe they have, an interest in the outcome of the controversy); *Pennsylvania Power & Light Co. v. Gulf Oil Corp.*, 270 Pa.Super. 514, 411 A.2d 1203, 1218 (1980) (holding that whether utility "customers believe that they will benefit . . . can be satisfactorily discovered on voir dire").

As Alston notes, Black River customers enjoy similar rights to and benefits of corporate stockholders. Black River members attend annual and special meetings and elect members of the Board of Trustees. They have the power to alter, amend, or repeal their bylaws. Excess revenues are credited to a patron's capital account. If Black River dissolved, its assets, after the payment of all debts, obligations, and liabilities, would be distributed to its members.

However, unlike corporate shareholders, the members of Black River are first and foremost customers of a utility.

Their main concern is utility service, not profit. Moreover, utility customers have little choice in their provider.

The Mississippi Supreme Court has refused to per se disqualify members of cooperatives, explaining:

> In a largely rural area such as exists in Mississippi, all people outside municipalities are supplied by electric cooperatives. Any pecuniary gain the customer or member receives is practically nil. . . . Mississippi jurisprudence is not ready to adopt or establish [a per se rule of disqualification for co-operative members]. We have adequate law and authority which will provide for the obtaining of a fair trial and an impartial jury without such a per se disqualification for cause.

*Williams v. Dixie Elec. Power Assoc.*, 514 So.2d 332, 338 (Miss.1987) (quoting *Garcia v. Coast Elec. Power Assoc.*, 493 So.2d 380, 383–84 (Miss.1986)).

South Carolina is geographically similar to Mississippi. As we recognized in *Wall v. Keels*, it is possible that many, if not most, prospective jurors in a predominantly rural county would be customers of a cooperative. Adoption of a rule of per se exclusion might render a trial in the county served by the cooperative impossible.

Therefore, before a cooperative customer is excused for cause, the party attempting to disqualify the potential juror must demonstrate actual bias. Furthermore, the trial judge shall have the discretion to decide whether the cooperative customer "is not indifferent in the cause." S.C.Code Ann. § 14–7–1020 (Supp.1998).

This determination should be made on a case-by-case basis. In some circumstances, the trial judge may determine the mere implication of bias is enough to disqualify the cooperative customer. On the other hand, the potential benefit a customer could derive from a case may be so slight or attenuated that a presumption of bias is unnecessary.

As we said in *Wall v. Keels*, we caution trial judges to be aware of the potential for bias in cases involving cooperatives. We, therefore, urge judges to allow sufficient voir dire to give parties enough information about prospective jurors to determine whether cooperative customers could serve as fair

and impartial jurors. Although this list is not exclusive, judges should keep these considerations in mind in developing voir dire, and in determining whether to strike customers of cooperative associations for cause: (1) the amount in controversy; (2) the prospective jurors' benefit or detriment; (3) the prospective jurors' **perceived** benefit or detriment;[4] and (4) the prospective jurors' involvement with the cooperative association.

In this case, Alston did not request extensive voir dire. Rather, he asked for exclusion of all members of Black River. The trial court did not err in refusing to excuse cooperative members for cause.

**AFFIRMED.**

CONNOR and STILWELL, JJ., concur and ANDERSON, J. dissents in separate opinion.

ANDERSON, Judge (dissenting):

I respectfully dissent. The majority concludes jurors who are members of an electric cooperative, which is a party to the suit, are eligible to serve as jurors, subject to a challenge for cause in the particular case. I disagree.

### *ISSUE*

Should South Carolina adopt a *per se* rule of disqualification from jury service for members of an electric cooperative who is a party to the case?

### *LAW/ANALYSIS*

Fundamental to our system of courts is the tenet that litigants are guaranteed a fair and impartial jury. *See Brown v. S.H. Kress & Co.*, 170 S.C. 178, 170 S.E. 142 (1933). South Carolina Code Ann. § 14–7–1050 (Supp.1998) reads:

In the trial of all actions at law in the courts of common pleas and issues ordered to be framed by the judge in equity cases in the courts, the clerk ... shall furnish the parties or their attorneys with a list of twenty jurors from

---

**4.** *See generally City of Cleveland v. Cleveland Elec. Illuminating Co.*, 538 F.Supp. 1240 (N.D.Ohio 1980).

the whole number of jurors who are in attendance.... [I]n all civil cases any party shall have the right to demand a panel of twenty **competent and impartial jurors** from which to strike a jury.

S.C.Code Ann. § 14–7–1050 (Supp.1998) (emphasis added).

As the majority explicates, S.C.Code Ann. § 14–7–1020 (Supp.1998) provides for the disqualification of jurors.

The court shall, on motion of either party in the suit, examine on oath any person who is called as a juror to know whether he is related to either party, **has any interest in the cause,** has expressed or formed any opinion, or is sensible of any bias or prejudice therein, and the party objecting to the juror may introduce any other competent evidence in support of the objection. **If it appears to the court that the juror is not indifferent in the cause, he must be placed aside** as to the trial of that cause and another must be called.

S.C.Code Ann. § 14–7–1020 (Supp.1998) (emphasis added).

### A. Members' Interest in the Cause

To determine if there is an "interest in the cause" by a member of Black River, I begin my analysis by looking to the nature of the cooperative and its relationship to its members. The provisions of S.C.Code Ann. § 33–49–10 *et seq.* govern rural electric cooperatives. "Cooperative nonprofit membership corporations may be organized under this chapter for the purpose of supplying electric energy and promoting and extending the use thereof in rural areas." S.C.Code Ann. § 33–49–210 (Supp.1998). The cooperatives are administered through their bylaws adopted and amended by the members. "The bylaws shall set forth the rights and duties of members and trustees and may contain other provisions for the regulation and management of the affairs of the cooperative not inconsistent with this chapter or with its articles of incorporation." S.C.Code Ann. § 33–49–280 (Supp.1998).

Primarily, the rights of Black River's members are found in the bylaws. The bylaws ennunciate:

Any person, firm, association, corporation, or body politic or subdivision thereof may become a member of Black River Electric Cooperative, Inc. (hereinafter called the "Coopera-

tive") upon receipt of electric service from the Cooperative....

....

Each member shall, as soon as the electric energy shall be available, purchase from the Cooperative all electric energy used on the premises specified in his application for membership, and shall pay therefore monthly or as specified by the Board of Trustees, at rates which shall from time to time be fixed by the Board of Trustees. *It is expressly understood that amounts paid for electric energy in excess of the cost of service are furnished by members as capital and each member shall be credited with the capital so furnished as provided in these Bylaws.*

Black River Electric Cooperative, Inc. Bylaws, Article I, § 1, 6 (1987) (emphasis added).

Members have the right to vote upon each matter submitted at an annual meeting, or at special meetings. All questions are decided by a majority vote of the members voting in person. Bylaws, Art. III, § 5. The members vote to select the trustees on the Board.

The persons named as Board members in the Articles of Incorporation shall compose the Board until the first annual meeting or until their successors have been elected and shall have qualified. Three members of the Board shall be elected by ballot at each annual meeting of the members to serve for three years until their successors have been elected and shall have qualified: subject, however, to the provision that at such time as the Bylaws dealing with election of trustees from numbered districts are adopted, the members of the Board of Trustees as it is then composed shall be appointed to represent the respective districts until the normal expiration of their terms....

If an election of Board members shall not be held on the day designated herein for the annual meeting, or any adjournment thereof, a special meeting of the members shall be held for the purpose of electing Board members within a reasonable time thereafter. Board members shall be elected by a majority vote of the members voting in person.

Bylaws, Art. IV, § 2. The Board of Trustees has the power to set the rate for electricity charged to the members, as well as

elect the officers of the Cooperative. Bylaws, Art. I, § 6; Bylaws, Art. VI, § 2.

In determining the interest of the parties, one is indubitably drawn to the members' pecuniary interest. In addition to the prospect of paying higher rates, which may or may not be *de minimis,* the members of a cooperative receive a mandatory refund. The refund is governed by both statute and the cooperative's bylaws. Pursuant to S.C.Code Ann. § 33–49–460 (emphasis added):

Revenues of a cooperative for any fiscal year in excess of the amount thereof necessary:

(1) To defray expenses of the cooperative and of the operation and maintenance of its facilities during such fiscal year;

(2) To pay interest and principal obligations of the cooperative coming due in such fiscal year;

(3) To finance or to provide a reserve for the financing of the construction or acquisition by the cooperative of additional facilities to the extent determined by the board of trustees;

(4) To provide a reasonable reserve for working capital;

(5) To provide a reserve for the payment of indebtedness of the cooperative maturing more than one year after the date of the incurrence of such indebtedness in an amount not less than the total of the interest and principal payments in respect thereof required to be made during the next following fiscal year; and

(6) To provide a fund for education in cooperation and for the dissemination of information concerning the effective use of electric energy and other services made available by the cooperative;

*Shall unless otherwise determined by a vote of the members be distributed by the cooperative to its members as patronage refunds prorated in accordance with the patronage of the cooperative by the respective members paid for during such fiscal year.* Nothing herein contained shall be construed to prohibit the payment by a cooperative of all or any part of its indebtedness prior to the date when the same shall become due.

According to the Bylaws of Black River:

*All amounts in excess of operating costs and expenses at the moment of receipt by the Cooperative are received with the understanding that they are furnished by patrons, members and nonmembers alike, as capital. The Cooperative is obligated to pay credits to a capital account for each patron all such amounts in excess of operating costs and expenses.... All such items credited to the capital account of any patron shall have the same status as though they had been paid to the patron in cash pursuance of a legal obligation to do so and the patron had then furnished the Cooperative corresponding amounts for capital.*

All other amounts received by the Cooperative from its operations in excess of costs and expenses shall, insofar as permitted by law, be (a) used to offset any losses incurred during the current or prior fiscal year and (b) to the extent not needed for that purpose, allocated to its patrons on a patronage basis and any amount so allocation [sic] shall be included as part of the capital credited to the account of patrons, as herein provided.

. . . .

*In the event of dissolution or liquidation of the Cooperative, after all outstanding indebtedness of the Cooperative shall have been paid, outstanding capital credits shall be retired without priority on a pro rata basis before any payments are made on account of property rights of members. If, at any time prior to dissolution of liquidation, the Board shall determine that the financial condition of the Cooperative will not be impaired thereby, the capital credited to patrons' accounts may be retired in full or in part.*

. . . .

Notwithstanding any other provision of these Bylaws, the Board at its discretion, shall have the power at any time upon the death of any patron, if the legal representative of his estate shall request in writing that the capital credited to any such patron be retired prior to the time such capital would otherwise be retired under the provisions of these Bylaws, to retire capital credited to such patron immediately upon such terms and conditions as the Board, acting under the policies of general application, and the legal

representatives of such patron's estate shall agree upon; provided, however, that the financial condition of the Cooperative will not be impaired thereby.

Bylaws, Art. VII, § 2 (emphasis added).

Unequivocally, members have an interest in the amounts of their refund each year. The costs of litigation will affect the costs of Black River, and thereby reduce the amount of the members' refunds. "Liability for tort is a hazard that may be considered as part of the expenses of operation and maintenance of the facilities of electric cooperatives provided for in Section [33–49–460]." *Bush v. Aiken Electric Cooperative, Inc.*, 226 S.C. 442, 448, 85 S.E.2d 716, 719 (1955). Concomitantly, whatever the potential cost of this litigation is to Black River, it is a cost to the members. The potential costs of litigation are debts owed by a cooperative, which must be paid before any members receive their portion of the remaining assets in the event of a dissolution. In a commonsensical and practical analysis, it is contrary to reason to believe a juror who is a member of Black River can be "indifferent in the cause."

## B. Utility Members Juxtaposed to Stockholders

The South Carolina Supreme Court in *Southern Bell Telephone and Telegraph Company v. Shepard*, 262 S.C. 217, 204 S.E.2d 11 (1974) found stockholders incompetent to serve on a jury in which the company was a party. The Court instructed:

> *'That a stockholder in a company which is a party to a lawsuit is incompetent to sit as a juror is so well settled as to be black letter law* .... The district court's refusal to strike the Ford stockholder for cause ... is reversible error.'

*Id.*, 262 S.C. at 222, 204 S.E.2d at 12 (quoting *Chestnut v. Ford Motor Company*, 445 F.2d 967 (4th Cir.1971)) (emphasis added).

South Carolina has not addressed whether the same rule should apply to members of a cooperative. However, South Carolina has recognized the similarities between members and stockholders. In *Bookhart v. Central Elec. Power Co-op.*, 219 S.C. 414, 65 S.E.2d 781 (1951) the Court articulates:

There is no 'public' which is separable from the members in the rural areas where the cooperatives do business; and *they at once take the place of the stockholders and customers of privately owned utilities; they are both owners and customers.*

*Bookhart,* 219 S.C. at 423, 65 S.E.2d at 784. *See also Bush v. Aiken Elec. Co-op.,* 226 S.C. 442, 85 S.E.2d 716 (1955).

In *Lamar Electric Membership Corp. v. Carroll,* 89 Ga.App. 440, 79 S.E.2d 832, 840 (1953), the Court stated:

One word contained in the Electric Membership Corporation Act designates both the shareholder and the customer; that word is 'member.' By whatever word the customer may be designated, he is still a customer, and by whatever name a shareholder may be referred to he is still a shareholder.

Other jurisdictions deciding the issue have ruled members of an electric cooperative should be treated as stockholders and are disqualified from jury service when the cooperative is a party. In *Thompson v. Sawnee Electric Membership Corporation,* 157 Ga.App. 561, 278 S.E.2d 143 (1981), the Court held:

It is clear that the members of an electric membership corporation are in the same position as the stockholders of a corporation or the policyholders of a mutual insurance company as regards their right to share in the net earnings of the business.... Accordingly, we conclude that the members of an electric membership corporation are disqualified from service as jurors in the trial of a case in which damages are sought from the corporation.

*Thompson,* 278 S.E.2d at 145.

After discussing the statutory requirements that members receive the excess revenues of the electric cooperative, the Court of Appeals of Georgia enunciated:

Based on factors such as the foregoing this court previously has determined that "the members of an electric membership corporation are in the same position as the stockholders of a corporation or the policyholders of a mutual insurance company as regards their right to share in the net earnings of the business."

. . . .

The issue presented here is whether the holding in *Thompson* should be extended to the facts of this case so as to disqualify members of electric membership corporations from serving as jurors in criminal trials in which the corporation is the victim of the crime charged. We hold that it should.

*Lowman v. State,* 197 Ga.App. 556, 398 S.E.2d 832, 833 (1990).

The Supreme Court of South Dakota has averred:

Over defendant's timely challenge at least one member of this Cooperative was allowed to sit on the jury. The challenge should have been sustained and all members of the Association removed from the jury list. Membership in the Cooperative alleged to have been burglarized clearly constituted a disqualifying interest on the part of such jurors.... It was immaterial how such membership was obtained.

*State v. Thomlinson,* 78 S.D. 235, 100 N.W.2d 121, 122 (1960).

The most cited authority in favor of treating members of a cooperative the same as stockholders of corporations is *Ozark Border Electric Cooperative v. Stacy,* 348 S.W.2d 586 (Mo. App.1961). The Court elucidated:

'Revenues of a co-operative for any fiscal year in excess of the amount thereof necessary' to pay expenses and provide reserves 'shall, unless otherwise determined by a vote of the members, be distributed by the co-operative to its members as patronage refunds prorated in accordance with the patronage of the cooperative by the respective members paid for during such fiscal year'; and, in the event of dissolution, the remaining property and assets (after payment of or provision for all debts, obligations and liabilities of the co-operative) shall be distributed 'among its members in proportion to the aggregate patronage of each such member during the seven years next preceding' the date of filing of the certificate of dissolution.

Being neither a partnership nor an ordinary business corporation, instant plaintiff is of a 'distinct character' recognized and conferred by our General Assembly in the special act under which it was organized and operates ... but, insofar as the problem under discussion is concerned, it

appears that plaintiff differs from other corporations not importantly in corporate existence and function but primarily in that the '(r)evenues ... in excess of the amount thereof necessary' to pay expenses and provide reserves, instead of being subject to distribution in the form of dividends to stockholders as the 'profits' of an ordinary business corporation would be, are distributable to plaintiff's members 'as patronage refunds prorated in accordance with the patronage of the co-operative by the respective members paid for during such fiscal year.' ... And, although plaintiff's 'members' may not be stockholders within the strict, literal meaning of that term as ordinarily defined, i.e., '(o)ne who is a holder or proprietor of stock or stocks' [Webster's New International Dictionary, 2nd Ed., p. 2480; *Louisville Board of Ins. Agents v. Jefferson County Board of Education, Kry.*, 309 S.W.2d 40, 41], we agree with our brethren of the bench in other jurisdictions who have declared that, under 'the curious wording' of these special acts relating to rural electric co-operatives, the 'members' of such co-operatives 'at once take the place of the stockholders and customers of privately owned utilities; they are both owners and customers....'

. . . .

Since, as we have seen, 'members' of a rural electric cooperative 'are both owners and customers' and 'at once take the place of the stockholders and customers of privately owned utilities,' *it would seem to be logical and proper that, in determining their competency to sit as jurors in an action to which their co-operative is a party, the same rule should be followed and applied as in cases involving stockholders of other corporations and thus their disqualification for such service should be declared.*

*Stacy*, 348 S.W.2d at 587–589 (citations omitted) (emphasis added).

Other states have refused to follow a *per se* rule of disqualification for members of an electric cooperative who is a party to the case. In *Garcia v. Coast Electric Power Association*, 493 So.2d 380 (Miss.1986), the Supreme Court of Mississippi reasoned:

The main thrust of appellant's contention here is that a potential juror, who is a member of a cooperative association, which is a party to a lawsuit, is per se disqualified from sitting as a juror.

. . . .

In a largely rural area such as exists in Mississippi, all people outside municipalities are supplied by electrical cooperatives. Any pecuniary gain the customer or member receives is practically nil. . . . Mississippi jurisprudence is not ready to adopt or establish [a *per se* disqualification] rule. We have adequate law and authority which will provide for the obtaining of a fair and impartial jury without such a per se disqualification for cause.

*Garcia*, 493 So.2d at 382–83.

Black River Electric Cooperative raises the specter that a *per se* disqualification rule will create havoc in jury selections in small counties serviced by cooperatives. This chimera is suppositional at best. Duke Power, South Carolina Electric & Gas, and Carolina Power and Light are major utilities in this state with large geographical areas assigned as protected territories. There are no counties encapsulated in totality by a cooperative. A mandatory change of venue due to a lack of qualified jurors in a small county is the quintessential "red herring" argument.

In the instant case, we are not dealing with mere customers and ratepayers. The members of Black River share in its financial profitability through the refunds they receive at the end of the year as well as their distribution in the event of dissolution. Their "interest" moves beyond the realm of a limited interest. Members have a pecuniary interest sufficient to cloud even the most unsullied and veridical person's judgment.

The qualification of a juror is not to be determined alone by the fact that he declares his fairness and impartiality.

In *State v. Prater*, 26 S.C. 198, 2 S.E. 108, 109, Mr. Justice McIver, for this court, said: "it is quite clear that the mere fact that a given juror swears that he is not sensible of any bias would not be sufficient to qualify him to sit as a juror in a particular case; for, if that were the rule, then a close friend, or even a near relative of the accused, might, by

simply swearing that he was not sensible of any bias, force himself upon the jury."

. . . .

In *Fender v. N.Y. Life Insurance Co.,* 158 S.C. 331, 155 S.E. 577, 578, we reaffirmed the principle announced in *State v. Sharpe,* 138 S.C. 58, 135 S.E. 635, that: "Our circuit judges should be very careful to keep off juries persons who are related to the parties, *or who, in any manner, have an interest in the result of the cause."*
*Brown v. S.H. Kress & Co.,* 170 S.C. 178, 170 S.E. 142, 143 (1933) (emphasis added).

Our laws guarantee: "[A]ny party shall have the right to demand a panel of twenty competent and impartial jurors from which to strike a jury." S.C.Code Ann. § 14–7–1050 (Supp.1998). Firmly established in our jurisprudence is the principle of a fair and impartial jury. *See Brown v. S.H. Kress & Co., supra; Chavous v. Brown,* 299 S.C. 398, 385 S.E.2d 206 (Ct.App.1989). As articulated in *Ozark Border Electric Cooperative v. Stacy,* 348 S.W.2d 586, 591 (Mo.App. 1961):

> If these virile statements of principle are not to 'become as sounding brass or a tinkling cymbal' [1 Corinthians 13:1] and if our reaffirmation thereof is not to degenerate into impotent lip service, we are of the conviction that ... even as a stockholder of an ordinary business corporation is disqualified to sit in an action to which the corporation is a party because of his interest, however slight, in the subject matter in litigation ... so we should hold, as we do, that a member of a rural electric cooperative ... whose status is akin to that of a stockholder and whose interest, financial and otherwise, is no more remote or minute and certainly no less active or live than that of many stockholders, is disqualified to sit as a juror in a suit to which the co-operative is a party. *See again Salt River Valley Water Users' Ass'n. v. Berry,* [31 Ariz. 39, 250 P. 356 (1926) ]; *Peanut Growers' Exch. v. Bobbitt,* [188 N.C. 335, 124 S.E. 625 (1924) ]; *State v. Thomlinson, supra.*

I would adopt a *per se* rule of disqualification from jury service for members of an electric cooperative who is a party to the case. The trial court erred in allowing members of

Black River Electric Cooperative to serve on the jury. Alston was not given a "fair and impartial jury."